## HEDGECROFT V. CITY OF HOUSTON.

No. A-3275. Decided December 5, 1951.
Rehearing overruled January 16, 1952.
(244 S. W., 2d Series, 632.)

*Malcolm R. Wilkey* and *Butler, Binion, Rice & Cook,* all of Houston, for petitioner.

The Court of Civil Appeals erred as a matter of law in holding that the premises claimed by Hedgecroft as exempt from taxation on January 1, 1949, were not being used by it for charitable purposes as provided under Article VIII, section 2 of the Constitution, and Article 7150, sec. 7 of the revised

Civil Statutes. Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926; Harris v. City of Fort Worth, 141 Texas 600, 180 S.W. 131; Benevolent Order of Elks v. City of Houston, 44 S.W. 2d 488.

*Will Sears,* City Attorney, and *Charles M. Rawson,* assistant City Attorney of Houston, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

One question is presented in this case: Was the property in the City of Houston owned and used by petitioner as a charitable hospital, clinic and training school for the treatment of poliomyelitis and similar diseases exempt from ad valorem taxes of the City and the Houston Independent School District for the year 1949?

Petitioner Hedgecroft, a corporation, filed the suit against respondent, the City of Houston, for declaratory judgment. Respondent excepted to the petition on the ground that the facts and circumstances alleged wholly fail to show an actual, direct and exclusive use of the property by petitioner on January 1, 1949, as a hospital, clinic and training school for the treatment of poliomyelitis and similar diseases, but on the contrary show that the use did not commence until May 13, 1949. The trial court sustained the exception and dismissed the cause when petitioner declined to amend, and the trial court's judgment of dismissal was affirmed by the Court of Civil Appeals. 239 S. W. 2d 828.

The allegations of the petition are in substance as follows: Petitioner Hedgecroft is a corporation organized for the operation of a hospital, clinic and training school for the treatment of poliomyelitis and similar diseases, and is an institution of purely public charity. It owns the building and the land on which it is situated and uses the same as a hospital, clinic and training school for the treatment of the diseases above mentioned. Title to the property was acquired by petitioner through gift and conveyance on December 30, 1948. Before that time the property had been owned and occupied as a home. Long before petitioner acquired title it had agreed with a construction company to make the necessary alterations and repairs of the property to fit it for the operation of a hospital, clinic and training school, and beginning with the week ending July 7, 1948, and continuing until December 29, 1948, the construction company had been preparing plans for repairs and alterations. From August 1, 1948, through December 27, 1948, a blueprint company had furnished to petitioner numerous blueprints for the

repairing and remodeling of the premises. Prior to petitioner's acquisition of the property, on the day of acquisition and immediately thereafter, including January 1, 1949, petitioner was engaged in planning and making the ncessary repairs and improvements for the clinic and hospital, and the repairs and remodeling were completed on May 13, 1949, sufficiently to allow the Hedgecroft Clinic to move from its old premises to the premises which are the subject of this suit, and the clinic is still in operation there. On and since the date of acquisition, December 30, 1948, including January 1, 1950, the premises have been used exclusively by petitioner. During the period from December 30, 1948, to January 1, 1949, representatives of petitioner visited the premises and supervised the removal of furniture left by the former occupant, and during the same period the carpets were rolled up and sent out for cleaning. And during that three days one acting for the construction company visited the premises and made measurements and estimates for the remodeling work. On December 31, 1948, petitioner's gardener started work on the yard of the premises, and yard tools belonging to petitioner were placed in the garage. On that day a sign showing petitioner's ownership and another sign showing the name of the construction company employed for the remodeling and repairing of the premises were placed on the property. On December 29, 1948, a building permit for the remodeling and repairing was issued by the City of Houston to the construction company. The property has been owned by petitioner since December 30, 1948, and no other person or corporation has since that time received the benefit of the ownership and use of the property except as beneficiary of petitioner's charitable operations.

The part of Section 2 of Article VIII of the Texas Constitution under which the exemption is claimed is: "The legislature may, by general laws, exempt from taxation * * * all buildings used exclusively and owned by * * * institutions of purely public charity". Section 7 of Article 7150 of the Revised Civil Statutes of 1925 by its terms exempts from taxation: 'All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, etc."

Respondent by its special exception and in its argument admits petitioner's ownership of the property on and before January 1, 1949, and that petitioner is an institution of purely public charity, and it admits that such use as petitioner has made of the property since it became owner has been exclusive, that is to say, that no other than petitioner has occupied the

property and that it has not been leased or otherwise used for profit.

Citing decisions of this Court and of the Courts of Civil Appeals in which it is stated that the use required by the Constitution for the exemption must be actual, direct and exclusive, respondent takes the position that the acts of petitioner in relation to the property as set out in the petition amounted to nothing more than a slight or incidental use, were merely evidence of future plans and intentions, and did not constitute a present use on January 1, 1949, for the charitable purpose, in that no patients were admitted for treatment on that day or prior thereto, and that repairs and remodeling had not proceeded to the point where the building was ready for the admission of patients. The substance of the argument is that there was on January 1, 1949, no use of the premises within the meaning of the Constitution because the building was not then being actually operated and was not ready to be operated for the admission and treament of patients.

Petitioner, on the other hand, contends that in the performance on and prior to January 1, 1949, of the acts alleged in the petition, it was adapting and fitting the property for use as a hospital, clinic and training school, and in so doing was devoting the property to use for its charitable purpose, that preparation and operation of the hospital and clinic are both indispensable, and that the constitutional provision which exempts the property during operation likewise exempts it during bona fide and necessary preparation.

The very question before us has not been decided by the courts of this state. The Court of Civil Appeals, in support of its ruling, cites three Texas cases: State v. Settegast, Tex. Civ. App., 227 S. W. 253; Id. Com. App., 254 S. W. 925; Morris v. Lone Star Chapter, Masons, 68 Texas 698, 5 S. W. 519; Benevolent & Protective Order of Elks v. City of Houston, 44 S. W. 2d 488. The decision in each of those cases turned on the question of exclusive use. Exemption was denied in the Settegast case because the property, which consisted of six cottages rented to others was "not to be used directly in connection with the building or operation of the hospital, but only to aid in its maintenance", and so was not used exclusively by the institution. The property for which exemption was claimed in Morris v. Lone Star Chapter, Masons, was a three-story building. The third floor was used by the Masonic lodges and the other two floors were rented for profit, the rental being applied

to objects of charity. It was held that the property was not exempt because it was not used exclusively in furtherance of the owner's charitable purposes, part of it being rented for profit. Benevolent & Protective Order of Elks v. City of Houston held that the property was not exempt because part of the building was occupied and used by others who derived profit therefrom. In none of the three cases were the facts similar to the case before us. There was no question raised or decided in them as to use in the making of necessary and bona fide preparation for the operation of the charity.

Decisions from other staes in cases where the facts are similar to those in the case before us strongly support petitioner's contention that the property is exempt from the taxes claimed. In Application of Thomas S. Clarkson Memorial College of Technology, 274 App. Div. 732, 87 N. Y. S. 2d 491, the court affirmed an order of the assessors of the town that exempted relator's property which, from the date of its acquisition to July 1, 1946, when the assessments became complete, was in process of repairing, remodeling and readying for occupancy as living quarters for members of the school's faculty, staff and student body. No other use of the property had been made than the repairing and remodeling. It was contended by the taxing authorities that the property was not exempt because the relator, the owner, had failed to make proof of actual use of the property prior to and including July 1, 1946. The court admitted evidence showing the occupancy of the property by students and members of the faculy after July 1, 1946. The opinion was expressed that this evidence was competent as characterizing the use during the tax year in question. In holding that the property was exempt the court said: "If the subsequent use created a tax exempt status, then a use which was confined to readying them for such purpose was likewise entitled." The judgment of the Appellate Division of the Supreme Court was affirmed by the Court of Appeals. 300 N. Y. 595, 89 N. E. 2d 882.

The Supreme Court of Ohio in a very recent decision, Good Samaritan Hospital Ass'n v. Glander, 155 Ohio St. 507, 99 N. E. 2d 473, with three justices dissenting, held that property acquired by a hospital association to be used as a nurse's home was exempt from taxation for the year 1950 under a statute which exempted "property belonging to institutions used exclusively for charitable purposes." The land when acquired by the hospital association was improved by a dwelling house and a barn, and the record showed that continuously from before

the tax-lien day 1950 until the hearing after that day before the tax board the property was undergoing repairs to make it suitable for a nurse's home, but during no part of that period was it so used, the repairs not having been completed. The very brief opinion of the court, after the statement of the facts, is as follows:

"As the record discloses that since on and before tax-lien day 1950 the property in question, acquired by appellant for use for a charitable purpose, was undergoing repairs and remodeling to condition it for the charitable use for which it was acquired, and there being nothing in the record to show that during such time it had been used for a noncharitable purpose, the Board of Tax Appeals was in error in denying the exemption. Its decision is unlawful and unreasonable and is, therefore, reversed."

The case last discussed was decided by the Supreme Court of Ohio after the decision of the Court of Civil Appeals herein. In its opinion the Court of Civil Appeals cited and quoted from an earlier decision of the Supreme Court of Ohio, Jones v. Conn, 116 Ohio St. 1, 155 N. E. 791, in which appear expressions which would deny tax exemption to buildings in process of construction and not yet operated in the actual dispensation of the charity. In that case, however, the question was whether personal property belonging to the charitable trust estate was taxable for the years 1922 and 1923. The personal property was during those years and before the charity was actually dispensed invested for commercial purposes and the income was accumulated into an earnings fund, none of the investment being employed for exclusively charitable purposes. It was held that this property was not exempt and that the fact that the income was later used for charitable purposes did not exempt it for the years in question. Thus it is apparent that the material facts in Jones v. Conn are different from those before us. The facts in the later decision of the Supreme Court of Ohio above discussed, Good Samaritan Hospital Association v. Glander, are in substance the same as the facts in our case. Further, if there is conflict between the two Ohio cases, the later deprives the earlier decision of authoritative value in so far as there is conflict.

In Village of Hibbing v. Commissioner of Taxation, 217 Minn. 528, 14 N. W. 2d 923, 156 A. L. R. 1294, a charitable association became the equitable owner of improved property which had been owned and operated as a private hospital, and on February 19, 1941, it began remodeling the building and

constructing an addition and prosecuted the work diligently to completion in January, 1942. Operation of the hospital was begun on February 2, 1942. Taxes were levied by the Village of Hibbing on May 1, 1941, and in March, 1942, the Commissioner of Taxation granted the application of the Association for abatement of the 1941 taxes on the ground that the hospital was on May 1, 1941, a "public hospital" within the meaning of the Minnesota Constitution (Art. 9, sec. 1) and was therefore exempt from the taxes.

The Supreme Court of Minnesota, in affirming the decision of the Commission of Taxation and the Board of Tax Appeals, recognized the rule established by its prior decisions that "the right to exemption depends upon the concurrence of the institution's ownership and use of the property as a public hospital", and held that the association in adapting and fitting the property was devoting it to use comprehended within the exemption. The opinion contains the following:

"The right of exemption carries with it, as an incident, a reasonable opportunity by an institution entitled to tax exemption of its property, in execution of an intention so to do, to adapt and fit property acquired by it for the use upon which the right of exemption rests.     *     *     *     *     *     *

*     *     *     *     *     *     *     *     *     *     *     *

"Here the evidence justifies a finding that the parties by contract agreed to devote the hospital to use as a public hospital just as soon as that conveniently could be done; that on May 1, 1941, the work of adapting and fitting the property for such use was being prosecuted continuously and diligently in good faith; and that a reasonable time only was being consumed for the purpose. The board was warranted in adopting the view that, since on May 1, 1941, the parties were using the opportunity, incident to the exemption, of adapting and fitting the property for use as a public hospital, they were devoting the property to a use comprehended within the exemption, and consequently that it was being used and operated as a public hospital within the meaning of the exemption provisions of the constitution and statutes."

■ In our opinion the rule announced and applied in the out-of-state devisions above discussed is sound and is appropriate to this case. We approve the position taken by petitioner as thus stated in its application for writ of error: "It is obvious that without some preparation of the premises, there never could have been a polio clinic in operation. To fulfill the charitable purpose

of treating polio sufferers, Hedgecroft had first to remodel the property, then to operate the clinic. Preparation for and operation of the clinic are both indispensable. Both took place on the premises. Both constituted a use by Hedgecroft of the premises. The constitutional clause which admittedly exempts the property during operation likewise exempts the property during bona fide necessary preparation."

Petitioner's acts on and before January 1, 1949, as alleged in the petition, the substance of which has been set out at the beginning of this opinion, were part of the necessary preparation and remodeling of the building for operation as a hospital and clinic. The work proceeded until it was completed on May 13, 1949, and since that time the hospital and clinic have been operated as a public charity. The facts alleged show, in our opinion, an actual and direct use of the property on and prior to January 1, 1949, for the charitable purpose.

■ Respondent makes the valid argument that ownership with mere intentions, well-grounded plans and hopes cannot confer the exemption, in other words, that intention to use, without use, is not sufficient. But according to the allegations of the petition there was more than mere intention to use. Petitioner was engaged in acts appropriate and necessary to bring the property into proper condition for operation in the performance of its charitable purposes. We recognize the rule that exemptions from taxation are not favored and should be strictly construed, but we believe that a construction of the acts alleged in the petition as not amounting to use would be unreasonably strict and narrow.

The judgments of the District Court and the Court of Civil Appeals are reversed and the cause is remanded to the District Court for further proceedings consistent with this opinion.

Opinion delivered December 5, 1951.

Rehearing overruled January 16, 1952.