

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

April 25, 1958

Hon. George R. Killam
County Attorney
Scurry County
Snyder, Texas

OPINION NO. WW-420

Re: Whether oil, gas and
mineral properties held
in trust for Texas
Baptist Children's Home
for stated purposes are
exempt from county ad
valorem taxes.

Dear Mr. Killam:

In your request for an opinion of this office on the above captioned matter, you have advised us of the following facts. Dora E. Cunningham devised all of her right, title and interest in and to the oil, gas and other minerals in and under all of Section 613 of Block 97 of the East part of Section 653 in said Block 97, H. & T.C. Ry. Co. Survey in Scurry County, Texas, in trust for a stated period (which period has not expired) for the benefit of the Texas Baptist Children's Home, located at Round Rock, Texas.

We quote the following excerpt from the will:

"11. The income and principal of the Trust estate shall be administered and distributed as follows:

"a) During the existence of the Trust, there shall be paid to or for the benefit of the TEXAS BAPTIST CHILDREN'S HOME, located at Round Rock, Texas, so much of the principal or income of the Trust as the Trustees in the exercise of their sole discretion shall determine. I hereby state that the primary purposes for which this Trust is established are

"1) To provide funds for the erection and maintenance of necessary buildings and the purchase and maintenance of necessary equipment for the operation of said Texas Baptist Children's Home;

"11) To provide funds for the care and maintenance of the grounds of said Texas Baptist Children's Home;

"111) To provide funds for the purchase of additional grounds needed in the operation of said Texas Baptist Children's Home,

and I direct that the exercise of their discretion in this respect shall be in conformity with the foregoing purposes.

"b) Any funds which the Trustees in their sole discretion shall determine are not necessary for the purposes expressed in subparagraph (a) of this paragraph 11 of this ARTICLE II may be paid by the Trustees in their sole discretion to any one or more of the Southern Baptist religious, charitable, scientific, literary or educational organizations located in the State of Texas.

"c) In limitation of all provisions contained in this my Last Will and Testament with respect to the Trust herein created, I expressly direct that:

"1) All funds, properties and assets of the Trust shall be used for religious, charitable, scientific, literary or educational purposes or for the prevention of cruelty to children and for no other purposes, provided, however, that all funds, properties and assets shall be used within the State of Texas exclusively for such purposes. . ."

". . ."

"12. The Trust herein created shall terminate on the date which is the twenty-first anniversary of the death of the last survivor of MAURINE MYRTIS AWEAS, MATTIE ROSS CONSLEY and DANIEL M. GIBSON, and all principal and undistributed income then remaining in Trust shall be immediately distributed to the Board of Trustees of the Texas Baptist Children's Home of Round Rock, Texas, for the use by said Board for the benefit of said Texas Baptist Children's Home in conformity with the purposes hereinabove expressed in subparagraph (a) of paragraph 11 of this ARTICLE II. If, on the date of such termination, the said Texas Baptist Children's Home is no longer in existence, all principal and undistributed income then remaining in Trust shall be immediately distributed to the BAPTIST FOUNDATION OF TEXAS, Dallas, Texas, to be used for such religious, charitable, scientific, literary or educational purposes within the State of Texas as the governing body of such Baptist Foundation of Texas shall determine."

The trust property is presently producing oil and gas, and you ask whether the mineral interest held by the Trustees is exempt from county ad valorem taxes.

Article VIII, Section 2 of the Constitution of the State of Texas, has empowered the Legislature to exempt from taxation certain enumerated properties, among which are ". . . institutions of purely public charity." In pursuance to this particular constitutional grant, the Legislature enacted Section 7 of Article 7150, V.C.S. Article 7150 reads, in part, as follows:

"The following property shall be exempt from taxation, to-wit:

". . .

"7. Public charities. - All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

It is clear that the charitable trust under consideration is an institution of purely public charity within the meaning of Section 2 of Article VIII of the Texas Constitution and Section 7 of Article 7150, V.C.S. State v. Settegast, 254 S.W. 925 (Comm. App. 1923). We, therefore, pass to a consideration of whether exemption may be accorded the property in question under the facts in this case.

In Morris v. Lone Star Ch. No. 6, R.A.M., 68 Tex. 697, 5 S.W., 519 (1887) the court held that under Section 2 of Article VIII of the Constitution, the Legislature could exempt from taxation the buildings of "institutions of purely public charity" but that such authorization extended only to such buildings and grounds as were used exclusively and owned by such institutions and that exclusive use meant the actual and direct use for the purposes of the charitable association.

In the Settegast case, supra, the court held that the trustees owed taxes on certain properties which were a part of the Hermann Hospital Estate. In that case the will had established a trust for the purpose of building and maintaining a charitable hospital. The trustees were conducting the business of managing the property and constructing the hospital under the name of the Hermann Hospital Estate. The property in question involved six rent houses; and all rents and income therefrom were to be used solely to support and maintain the Hermann Hospital. The court pointed out that the hospital itself was to be built on other property and that the property in question was not being used directly in connection with the building and operation of the hospital but only to aid in its maintenance.

In Hedgecroft v. City of Houston, 150 Tex. 654, 244 S.W. 2d 632 (1952), the court was concerned with the following facts. The Hedgecroft Corporation had acquired title to the property in question through gift and conveyance on December 30, 1948. Before that time the corporation had agreed with a construction company to make the necessary alterations and repairs of the property to fit it for the operation of a hospital, clinic and training school; and beginning with the week ending July 7, 1948, and continuing until December 29, 1948, the construction company had been preparing plans for repairs and alterations. From August 1, 1948, through December 27, 1948, a blue print company had furnished numerous blue prints concerning the contemplated repairs. Prior to the corporation's acquisition of the property in question and immediately thereafter including January 1, 1949, the corporation was engaged in planning and making the necessary repairs. The remodeling was completed on May 13, 1949, to an extent which allowed the clinic to move on to the premises; and the clinic had since been continuously in operation there. The City of Houston and the Houston Independent School District instituted a suit for taxes for the year 1949.

It was contended that there was no actual use of the premises within the meaning of the constitution because the building was not then actually being used for charitable purposes. The court reviewed the following Texas cases dealing with the requirement of exclusive use: State v. Settegast, 254 S.W. 925 (Comm. App. 1923); Morris v. Lone Star Chapter No. 6 Royal Arch Masons, 68 Tex. 698, 5 S.W. 519; B.P.O.E. Lodge No. 151 v. City of Houston, 44 S.W. 2d 488 (Tex. Civ. App., 1931, error ref), and distinguished these on the ground that in each case third parties were occupying all or a portion of the premises.

In holding that the property in question was exempt, the court reviewed decisions in other States in which exemption had been accorded on the basis that if the subsequent use of the premises

created a tax exempt situation then a use which was confined to readying them for such purpose established a right to exemption.

At page 636 the court said:

". . . The work proceeded until it was completed on May 13, 1949, and since that time the hospital and clinic have been operated as a public charity. The facts alleged show, in our opinion, an actual and direct use of the property on and prior to January 1, 1949, for the charitable purpose." (Emphasis supplied.)

The court in allowing the exemption recognized the well settled rule that exemptions from taxation are not favored and should be strictly construed, but stated that a construction of the acts alleged in the petition as not amounting to use would be unreasonably strict and narrow.

We think it evident from these decisions that the exemption accorded to charitable institutions extends only to the buildings and grounds used in the actual conduct of the charitable purposes for which the institution is operated. We therefore have concluded that the property in question is not exempt from county ad valorem taxes; and you are accordingly so advised."

## SUMMARY

Oil, gas and mineral interests held in trust for the Texas Baptist Children's Home and for other charitable purposes are not exempt from county ad valorem taxes.

Yours very truly

WILL WILSON
Attorney General of Texas

By *Marietta McGregor Payne*
Assistant

MMP/ba

APPROVED:

OPINION COMMITTEE

George P. Blackburn, Chairman
J. Mark McLaughlin
Harris Toller
Riley Fletcher

REVIEWED FOR THE ATTORNEY GENERAL

By  W. V. Geppert