

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

OVERRULED BY:
City of Waco v.
Texas Retired Teachers
Residence Corp.
464 Sw 2d 346 (Tex.Sup.)

August 24, 1962

Honorable Burney Walker
Criminal District Attorney
Waco, Texas

Opinion No. WW-1424

Re: Whether the Stilwell
Memorial Residence is
exempt from ad valorem
taxes under the stated
facts

Dear Mr. Walker:

You have requested an opinion from this office as to whether or not Stilwell Memorial Residence, which is to be operated by the Texas Retired Teachers Residence Corporation, is exempt from ad valorem taxes.

In connection with your letter you have attached Exhibit A, which is copied as follows:

"STATEMENT OF POLICIES FOR STILWELL MEMORIAL RESIDENCE
OF LAKE AIR CENTER, WACO, TEXAS

"Stilwell Memorial is a residence designed for retirement living and providing sheltered care for retired members of the teaching profession of the State of Texas. It is incorporated under the Non-profit Corporation Act of the State of Texas for charitable and educational purposes.

"The Stilwell Memorial Residence for retired teachers, hereinafter referred to as the Residence, is a project of the Texas Retired Teachers Association who formed a Residence Corporation for the purpose of creating this Residence for the sheltered care of its senior citizens. The Corporation is entitled the Texas Retired Teachers Residence Corporation, the President of which is Henry L. Foster, Sr., Box 767, Longview, Texas.

"The very foundation of the Residence has been based upon contributions from teachers and others throughout the State of Texas.

Moreover, the site is being donated for the Residence through the Chamber of Commerce of the City of Waco. The Federal Housing Administration has given an indication that they will approve a 100 per cent loan in the amount of approximately $914,000.00 under Section 231 of the Federal Housing Act which provides for housing for the elderly on a non-profit basis. The 144,640 square feet of land has been valued at $72,300.00 which is a contribution.

"Various types of accomodations are provided in an effort to meet the retirement needs of a cross-section of our senior teachers.

"The Bylaws provide for an admission fee of $250.00. However, the Bylaws also provide that the Trustees shall admit eligible applicants to the Residence on such terms as the circumstances of any particular applicant may in their judgment warrant. Each case is handled on an individual basis and charity cases will be accepted. No one will be denied admission because of financial inability to pay the cost.

"The Bylaws provide for a deposit of $250.00 to be held in a separate account for health purposes for the individual with the residue to apply on the funeral expenses of said resident. The balance is the property of the estate of the resident.

"Last illnesses and deaths of the members will be paid for by the Residence. Should the initial $250.00 health deposit be available, this will be applied. However, from a practical standpoint, the Residence will have to absorb much of this expense. This is particularly true of those residents who have minimum or no incomes and the charitable cases where the $250.00 deposit was waived.

"Those who are financially able to pay all their cost are expected to do so on a basis to be determined by the type of

accomodations they desire and the Admissions
Committee of the Board of Directors.  Each
case will be a matter of individual evalua-
tion, negotiation, and mutual agreement and
will be considered on the basis of its own
merit.

"The Directors have projected a budget
which establishes rates for a minimum of
$140.00 for singles to a few select accomo-
dations for doubles at $260.00 a month.

"Provisions will be made for those teach-
ers who have the minimum retirement income
of $100.00 a month of which there are a
substantial number in the upper age brackets
where the need is the greatest.  These fig-
ures include meals, administrative staff,
medical and interim nursing care as indi-
cated, and a routine sustaining health ser-
vice.  A small infirmary area is provided
for those who will require interim bed
care.  While this type of community living
for senior citizens is not appropriate for
every individual, there are large numbers
of teachers who, because of low salary pay-
ments and inadequate retirement programs of
the past, desperately need this type of en-
vironment.  It will provide friends, com-
panionship, and sheltered care for many of
those who have lived alone all their adult
lives.

"The incomes of this group are such that
in a non-profit situation a number can af-
ford to pay for all their care.  Of parti-
cular importance to this project are those
who cannot afford to pay.  Because of the
minimums for teacher retirement or old
age assistance, it is not anticipated that
there will be any requirements for full
charity; i.e., 100 per cent.  However, sub-
stantial differences will have to be made
up from the other residents, from the sub-
sidy of the Home, and from continuing cam-
paigns among teachers for supplementation
of the Residence — not an individual.

"The teachers of the State of Texas have
made contributions to help underwrite the

cost of this facility and will continue to
contribute to its support.. Without this
initial subsidy and continuing assistance,
the Residence cannot afford to operate as
a number will be unable to pay the full
cost for their care.

"The entire three acres will be devoted
to this cause of retirement living at a
minimum of cost."

You have given us further information that the Waco Cham-
ber of Commerce donated approximately three acres of land to
this corporation on which a building, or buildings, will be con-
structed for the operation of this corporation.  The tract of
land at this time is vacant property.  The deed was signed and
delivered by the Chamber of Commerce to the Texas Retired Teach-
ers Residence Corporation on May 3, 1962.

We are in agreement with your conclusions as set forth in
your letter that Stilwell, according to Exhibit A, is to be oper-
ated in much the same manner as Morningside Manor, Inc. of San
Antonio, which was the subject matter of Opinion No. WW-1277
heretofore rendered by this department.  You are advised that in
compliance with Opinion No. WW-1277, this corporation, when it
becomes operative, will meet the requirements of a purely public
charity, and will be exempt from ad valorem taxes.

As stated by you, the only question remaining is whether
or not Stilwell is, at this instant, exempt from ad valorem tax-
es.  At the present time this property is not being used as a
public charity or for charitable purposes and is subject to ad
valorem taxes, so long as it is just a vacant piece of land not
being put to any use.

In compliance with the rule laid down in Hedgecroft v.
City of Houston, 150 Tex. 654, 244 S.W.2d 632, this property
would become exempt for taxes as of January 1st next after it
is put to use by the Texas Retired Teachers Residence Corpora-
tion.  It is our opinion that the property is taxable as of Janu-
ary 1st of each year, and since it was not owned by the corpora-
tion on January 1, 1962, then it is subject to taxes for this
year.  If it is still a vacant piece of property on January 1,
1963 and not being used, then it will be taxable for the year
1963, and so long thereafter, as it is not put to a beneficial
use.  As soon as the exempt corporation starts construction on
the land, then it will become exempt from taxes beginning on the
following January 1st.

Quoting from the opinion of the Hedgecroft case, supra, at
page 636, the court had the following to say:

"Petitioner's acts on and before January 1, 1949, as alleged in the petition, the substance of which has been set out at the beginning of this opinion, were part of the necessary preparation and remodeling of the building for operation as a hospital and clinic. The work proceeded until it was completed on May 13, 1949, and since that time the hospital and clinic have been oper-ated as a public charity. The facts alleged show, in our opinion, an actual and direct use of the property on and prior to January 1, 1949, for the charitable purpose."

## S U M M A R Y

Under the stated facts, Stilwell Memorial Residence, to be operated by Texas Retired Teachers Residence Corporation, will qualify as a purely public charity, and the property in question will be exempt from ad valorem taxes beginning on the January 1st after construction is started, and the property is being used by the corporation.

Yours very truly,

WILL WILSON
Attorney General of Texas

By
J. H. Broadhurst
Assistant

JHB/jp

APPROVED:

OPINION COMMITTEE:
Morgan Nesbitt, Chairman

L. P. Lollar
Fred D. Ward
Robert Rowland

REVIEWED FOR THE ATTORNEY GENERAL
By: Leonard Passmore