

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 17, 1962

Honorable R. E. Swift
County Attorney
Anderson County
Palestine, Texas

Dear Mr. Swift:

Opinion No. WW-1318

Re: Exemption from ad valorem
    taxes of property belonging
    to The Cartmell Home for Aged
    and Orphans.

We quote the following excerpt from your letter requesting
the opinion of this office on the above captioned matter:

> "Where a home for aged and orphans,
> which is a public charity as set out in
> Article 7150, Section 7, is located on
> a 195 acre tract, and the buildings and
> the property actually used by the aged
> amounts to only about 5 acres, is the
> remaining 190 acres of this same tract
> subject to taxation?"

In connection with your request you have supplied us with
detailed facts concerning the Cartmell Home for Aged and Orphans,
hereinafter referred to as the Home, which is incorporated under
the laws of this State as a charitable corporation pursuant to
directives contained in the will of Sarah E. J. Cartmell of
Anderson County, Texas, who died in 1948.

By the residuary clause of her will, Miss Cartmell devised
and bequeathed all the residue of her estate to her Executors
and Trustees to be used by them for the establishment and main-
tenance of a home in and near Palestine, Texas, for the destitute
aged and for the destitute orphans. The testatrix directed that
her present "home place" be used for this home and that the home
be maintained there with such changes and additions to be made
and added as might from time to time be necessary.

The Home obtained its charter in June of 1953, at which time
the estate of Miss Cartmell was distributed to the Trustees named
in the will and/or appointed by the court. The first unit of the
Home was opened in 1956, the second unit in 1960, both units
being located on the 195 acre tract in question which was the
former home place of Miss Cartmell. The Home is being operated
at the top capacity for 56 persons with a waiting list of appli-
cants who desire admission.

Residents pay $65 per month for all services including room, board, laundry, nursing care, drugs and routine doctor bills, the actual cost of which averages approximately $150 monthly. Comparable services in a private home for the aged or one operated for a profit have been estimated to run from $150 to $300 per month.

The balance of all of the real property devised by Miss Cartmell to the Home (with the direction that the income therefrom be devoted to the establishment and maintenance of the Home) has been sold or is being held for sale or is rented or being held for rent. It has been rendered for taxation to the appropriate authorities. It is not controverted that these properties are subject to tax.

You have correctly concluded under the facts stated that the Home is an "institution of purely public charity" as that term is used in Section 2 of Article VIII of the Constitution of the State of Texas, pursuant to which Section the Legislature enacted Section 7 of Article 7150,[1] Vernon's Civil Statutes. As such an institution, it is exempt from taxation, the sole question being the extent of that exemption. Although you have stated ". . . that the buildings and property actually used by the aged and orphans amounts to only about 5 acres,. . .", elsewhere in connection with your request, it is stated that approximately eight to ten acres of land immediately surrounding the buildings are kept by mowing. It is further stated that some two or three pear trees are located on another portion of the tract, and that the pears are preserved in the kitchen in the Home for consumption by the residents. The south portion of the tract is described as being hilly and rocky and very rough land, with no

---

1/    Section 7 reads as follows:

"All buildings and personal property belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this

buildings located on any portion thereof, nor any income derived therefrom. The State Highway Department has advised the Home that it hopes to acquire approximately 22 acres of this tract as right-of-way for a Bypass around the City of Palestine.

We quote the following excerpt from the letter of the manager of the Home:

> "The policy of the Board of Directors regarding this 195 acres has always been that this is the 'Hometract' referred to in the will of Miss Cartmell and that it is to be used for the charitable purpose, that further expansions are to take place on this tract as the years go by and as its assets grow and that no portion of this tract will be held for sale or for rent."

In Hedgecroft v. City of Houston, 150 Tex. 654, 244 S.W.2d 632 (1952) the question was whether property in the City of Houston owned by The Hedgecroft Clinic, a charitable corporation operating a charitable hospital, clinic and training school for the treatment of poliomyelitis and similar diseases, was exempt from ad valorem taxes of the City and the Houston Independent School District for the year 1949. The City took the position that Hedgecroft had failed to show an actual, direct and exclusive use of the property for charitable purposes on January 1, 1949, and asserted that such action did not commence until May 13, 1949.

The property in question had been given and conveyed to Hedgecroft on December 30, 1948. Prior to that time, it had been owned and occupied as a home. Long before Hedgecroft acquired title, it had agreed with a construction company to make necessary alterations and repairs of the property to fit it

---

1 Con't./

> article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its law to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

for the operation of a hospital, clinic and training school. Be-
ginning with the week ending July 7, 1948, and continuing until
December 29, 1948, the construction company had been preparing
plans for repairs and alterations. Form August 1, 1948 through
December 27, 1948, a blueprint company had furnished Hedgecroft
with numerous blueprints for remodeling the premises. Prior to
Hedgecroft's acquisition of the property, on the day of acquisi-
tion and immediately thereafter, Hedgecroft was engaged in plan-
ning and making the necessary repairs and improvement for the
clinic and hospital, and on May 13, 1949, these repairs had
been completed sufficiently to allow Hedgecroft to move from its
old premises to the premises which were the subject of this suit.
On and since the date of acquisition, the premises had been used
exclusively by Hedgecroft, whose representatives visited the pre-
mises, supervised removal of furniture, started work on the yard,
etc. The building permit for the remodeling was issued December
29, 1948.

It was admitted by the City that Hedgecroft was an institu-
tion of purely public charity within the meaning of that term as
used in Section 2 of Article VIII of the Texas Constitution and
that such use as it had made of the property since it became the
owner thereof had been exclusive in the sense that no one else
had occupied the property nor had it been leased or otherwise used
for profit.

It was argued that the use required by the Constitution for
exemption must be actual, direct and exclusive and that Hedgecroft's
actions in relation to the property were merely evidence of future
plans and intentions and did not constitute a present use on
January 1, 1949, for its charitable purposes in that no patients
were admitted for treatment on that day or prior thereto. In
other words, it was argued that since the building was not then
being actually operated and was not ready to be operated for the
treatment of patients, it was not exempt. The court rejected
this position and accorded exemption.

The court reviewed decisions from other states holding, under
similar exemption provisions, that when the subsequent use created
a tax exempt status, then a use which was confined to readying
property for such purpose likewise created a tax exempt status.
We quote the following excerpt from page 636 of the opinion of
the court:

          "In our opinion the rule announced and
     applied in the out-of-state decisions above
     discussed is sound and is appropriate to this
     case. We approve the position taken by
     petitioner as thus stated in its application
     for writ of error: 'It is obvious that with-

out some preparation of the premises, there never could have been a polio clinic in opera-tion.  To fulfill the charitable purpose of treating polio sufferers, Hedgecroft had first to remodel the property, then to operate the clinic.  Preparation for and operation of the clinic are both indispensable.  Both took place on the premises.  Both constituted a use by Hedgecroft of the premises.  The constitutional clause which admittedly exempts the property during operation likewise exempts the property during bona fide necessary preparation.'

"  . . . The facts alleged show, in our opinion, an actual and direct use of the property on and prior to January 1, 1949, for the charitable purpose.

"Respondent makes the valid argument that ownership with mere intentions, well-grounded plans and hopes cannot confer the exemption, in other words, that intention to use, without use, is not sufficient.  But according to the allegations of the petition there was more than mere intention to use. . . ."

In view of the facts which have been furnished us, we cannot say that the Cartmell Home is making an actual, direct use of the entire 195 acres for its charitable purposes.  Just how much of 195 acres is being directly used by the Home is a fact question which must be determined by you.  But insofar as the Board of Directors of the Home contemplates further expansion on the tract "as the years go by", in view of the Hedgecroft case, ownership with mere intentions, well-grounded plans and hopes is insufficient to confer exemption.  The non-use of the property by others, or the fact it produces no revenue, is not sufficient to effectuate exemption.

## S U M M A R Y

That portion of the 195 acre tract which is directly used by the Cartmell Home for the Aged and Orphans for its charitable purpose is exempt from ad valorem taxes. The remaining portion of the acreage which is not presently being directly used by the charitable corporation for its charitable

purposes cannot be exempt from ad valorem
taxation despite the fact that further
expansions and ultimate direct use are
contemplated at some uncertain future
time.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: Marietta McGregor Payne
    Marietta McGregor Payne
    Assistant

MMP:cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Jay Howell
W. O. Shultz
Charles Lind
John Hoffmann

REVIEWED FOR THE ATTORNEY GENERAL
By:  Houghton Brownlee, Jr.