DALLAS CENTRAL APPRAISAL
DISTRICT, Appellant,

v.

FRIENDS OF the MILITARY d/b/a
Vet to Vet, Appellee.

No. 05–08–00115–CV.

Court of Appeals of Texas,
Dallas.

Dec. 16, 2009.

Rehearing Overruled March 17, 2010.

Mike M. Tabor, Kevin Haynes, C., Shannon, Gracey, Ratliff & Miller, LLP, Dallas, TX, for Appellant.

Richard Barrett–Cuetara, Cowles & Thompson, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION ON MOTION FOR REHEARING

Opinion By Justice LANG–MIERS.

We deny appellant's motion for rehearing. On the Court's own motion, we withdraw our opinion of July 15, 2009 and vacate our judgment of that date. This is now the opinion of the Court.

Friends of the Military d/b/a Vet to Vet, a charitable organization, applied to the Dallas Central Appraisal District for an exemption from ad valorem taxes on property it owned in Dallas County. The Appraisal District denied the exemption and Vet to Vet appealed to the Appraisal Review Board. The Appraisal Review Board upheld the denial and Vet to Vet filed this lawsuit in district court challenging the denial. A jury found in favor of Vet to Vet. The Appraisal District appeals, arguing that the evidence is legally and factually insufficient to support the jury's findings. We affirm.

### LEGAL SUFFICIENCY OF THE EVIDENCE

In evaluating whether the evidence is legally sufficient to support a jury finding, we must assume jurors made all inferences in favor of the finding if reasonable minds could and disregard all other inferences. *City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex.2005). If the evidence would allow reasonable and fair-minded people to differ in their conclusions, then we must allow jurors to do so. *Id.* We cannot substitute our judgment for that of the jury so long as the evidence falls within this zone of reasonable disagreement. *Id.* The ultimate test in a legal sufficiency review is whether the evi-

dence allows reasonable minds to reach the finding under review. *Id.* at 822. Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 899 (Tex.App.-Dallas 2006, no pet.). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Id.*

The Appraisal District first argues that the evidence is not legally sufficient to support the jury's answer to question one, that in 2004 Vet to Vet's property had "incomplete improvements that were under physical preparation." Next, it argues that the evidence is not legally sufficient to support the jury's answer to question two, that the "incomplete improvements" were "designed and intended to be used exclusively by a qualified charitable organization."

## A. Is the evidence legally sufficient to support the jury's answer to question one?

Question one of the jury charge asked: For tax year 2004 did the property in question have incomplete improvements that were under physical preparation?

Answer "Yes" or "No."

Answer: _Yes_

Unimproved real property owned by a qualified charitable organization is exempt from ad valorem taxes if the property con-

sists of "an incomplete improvement that is under ... physical preparation." Act of May 6, 1999, 76th Leg., R.S., ch. 138, § 1, 1999 Tex. Gen. Laws 596, 597, *amended by* Act of May 28, 2003, 78th Leg., R.S., ch. 288, § 1.01, 2003 Tex. Gen. Laws 1256, 1256, *subsequent amendments omitted* (current version at Tex. Tax Code Ann. § 11.18 (Vernon 2008)). The charge instructed the jury that "an incomplete improvement is under physical preparation if the charitable organization has engaged in architectural or engineering work, soil testing, land clearing activities, or site improvement work necessary for the construction of the improvement; or conducted an environmental or land use study relating to the construction of the improvement."[1] The only one of these various methods of proving "physical preparation" at issue in this appeal is whether Vet to Vet "conducted ... [a] land use study relating to the construction of the improvement."

■ The jury charge did not define "land use study" and neither party objected to the absence of a definition in the charge. Because the Appraisal District did not request a definition of "land use study" or object to its absence, we must measure the legal sufficiency of the evidence against the term's commonly-understood meaning. *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 869 (Tex.App.-Dallas 2008, no pet.); *Kroger Co. v. Brown*, 267 S.W.3d 320, 323 (Tex.App.-Houston [14th Dist.] 2008, no pet.).[2]

1. The jury instruction comported with the definition contained in tax code section 11.18(m). *See* Act of May 6, 1999, 76th Leg., R.S., ch. 138, § 1, 1999 Tex. Gen. Laws at 597.

2. In its motion for rehearing, the Appraisal District argues that it was not required to request a definition or object to its absence to have a "full no-evidence review based on substantive Texas law" because its motions for

directed verdict and for judgment notwithstanding the verdict preserved the issue for our review. Although we agree that the no-evidence issue was preserved, we must still address the standard by which we judge the sufficiency of the evidence. Texas law states that when a term is not defined, we judge the sufficiency of the evidence based on its commonly-understood meaning. *See EMC Mortgage Corp.*, 252 S.W.3d at 869. To the extent

We have not found a definition of "land use study" in Texas case law. This Court, however, has said that the purpose of a "land study" is to "allow the City to review and approve a general plan for the development of property within its limits, including the layout of streets, open spaces, sites for public facilities, and utilities." *Levy v. City of Plano*, No. 05–97–00061–CV, 2001 WL 1382520, at *1 (Tex.App.-Dallas Nov. 8, 2001, no pet.) (not designated for publication). And our sister court stated that a "land use study" may establish the "highest and best use" of a particular parcel of land. *Marriott Corp. v. Azar*, 697 S.W.2d 60, 61 (Tex.App.-El Paso 1985, writ ref'd n.r.e.). Another stated that it may also reflect a particular parcel's percentage of development versus potential for future development. *Gerst v. Houston First Savs. Ass'n*, 422 S.W.2d 514, 519 (Tex.Civ.App.-Austin 1968, no writ). The Appraisal District notes that a leading real estate dictionary defines "land use study" as "[a] complete inventory of the land parcels in a given community or area, classified by type of use[, which] may include an analysis of the patterns of use revealed by the inventory." The Dict. of Real Estate Appraisal 159 (4th ed. 2002). And Elizabeth Sarles, the Appraisal District's expert, testified that a land use study is a "feasibility study." But when she was asked whether a land use study included issues relating to zoning, she stated, "I am not—I'm not involved in doing those, so I couldn't—I can't state that specifically."

The Appraisal District first argues that Vet to Vet did not offer any evidence that it conducted a land use study on the property in 2004. The Appraisal District also argues that the evidence that Vet to Vet "involuntarily 'participated' " in meetings is not sufficient to show that Vet to Vet itself "conducted" a land use study. It argues that the evidence, even viewed in the most favorable light, does not support an inference that Vet to Vet conducted a land use study. But "conducted" was not defined in the court's charge and is not defined in the statute. We look to the commonly-understood meaning of "conduct," which includes "to bring by or as if by leading: lead, guide, escort...." Webster's Third New Int'l Dict. 474 (1981).

■ With these standards in mind, we now must determine whether there is more than a scintilla of evidence to support the jury's finding that in 2004 the property had incomplete improvements that were under physical preparation.

James Johnson, Vet to Vet's founder, testified that he established Vet to Vet as a nonprofit charitable organization to assist disabled veterans. He testified that Vet to Vet acquired approximately two acres of vacant land along Northwest Highway adjacent to Garvin Cemetery, a small, historic cemetery in Dallas. Vet to Vet's property surrounds Garvin Cemetery on three sides. In 2002, Johnson talked to a company about placing a small building on the property that Vet to Vet would use to teach computer skills to veterans and help them obtain jobs. But unknown to Vet to Vet, the City of Dallas had begun a process to designate Garvin Cemetery and Vet to Vet's property as a historical landmark cemetery, which would preclude new construction on the property. The process was in its final stages in 2003 when Johnson learned what the city intended to do. Vet to Vet received a notice of the "final

that the Appraisal District argues that judging the sufficiency of the evidence regarding whether Vet to Vet "conducted ... [a] land use study" by using the commonly-understood

meaning of "land use study" denies it a "full no-evidence review based on substantive Texas law," we disagree. *See id.*

meeting" to change the designation of the property and Johnson attended the meeting. He said the "people . . . [had] already made up their mind[s] . . . [and] were already moving on the rezoning [of] this land."

The evidence showed that Vet to Vet hired an attorney and that Johnson attended approximately twelve meetings over three-plus years in an effort to stop the rezoning of its land. At these meetings, Vet to Vet demonstrated the value of its property without the historical landmark designation, and Vet to Vet's efforts were ultimately successful. Johnson explained that the process for obtaining approval for Vet to Vet to build on its property included the historical landmark designation committee's review of the land usage and the zoning committee's determination whether the construction would actually be allowed. He also testified that the city council had to finally approve the recommendation by passing a city ordinance.

While the meetings to rezone the property were taking place, Vet to Vet applied to the Appraisal District for an exemption from ad valorem taxes on the property for calendar year 2004. Sarles, a senior staff appraiser for the Appraisal District at that time, testified that Vet to Vet's attorney came to her office before he submitted the application to "discuss the situation." The attorney described the land and the "situation" to her, and she told him to submit the application and she would review it. Sarles and Scott Hammer, the Appraisal District's supervisor of exemptions and property records at that time, evaluated the application and inspected the property. Sarles testified that the field inspection showed that the property was "a vacant, mowed land with no signs of construction or activity" and that the application was denied for that reason. She testified that "[i]n order to obtain a charitable exemp-

tion, there has to be a building or tangible personal property or physical preparation on the building" and that "[i]f we had seen it, it would have—it would have qualified." She also testified that she did not know whether a "land use study"—part of the definition of "physical preparation"—included matters relating to zoning.

Johnson testified that he knew Vet to Vet could not build on its property until the zoning issue was resolved, but he said it was still Vet to Vet's intent in 2004 to place a building on the property for its use in assisting disabled veterans. He said it was "absolutely" necessary to resolve the zoning issue before he could start the process of building. And the evidence is undisputed that the City would not allow Vet to Vet to build on its property because of the proposed historical landmark designation.

The Appraisal District argues that Johnson's testimony that Vet to Vet's intent in 2004 was to place a building on the property is "speculative, wholly uncorroborated, . . . went undisclosed to [the Appraisal District] during the exemption review process," and was contradicted by Johnson's knowledge that the property was undergoing a rezoning and that construction was not allowed. But it does not cite authority stating that a property owner litigating the denial of a tax exemption is limited to the evidence presented to the administrative bodies, nor does it cite authority stating that evidence of a witness's intent must be corroborated before it may be considered in a legal insufficiency review. Additionally, Vet to Vet's three-plus-year fight against the change in the property zoning corroborates Johnson's testimony that it was Vet to Vet's intent to build on the property. Johnson testified that the committees ultimately agreed to recommend that Vet to Vet be allowed to build on its property, but that the city council did not

pass an ordinance adopting the committees' recommendation until about May 2007.

In summary, the evidence showed that before Johnson became involved the City had already decided to designate Vet to Vet's property as a historical landmark cemetery, which would have precluded construction. The jury could have reasonably inferred from the evidence that Vet to Vet guided the committees' decision-making process by its participation in the various committee meetings and that, because of those efforts, the City ultimately reviewed and approved a general plan for development of Vet to Vet's property. Accordingly, we conclude that there is more than a scintilla of evidence from which the jury could have found that Vet to Vet conducted a land use study. *See Hedgecroft v. City of Houston,* 150 Tex. 654, 662, 244 S.W.2d 632, 636 (1951) (noting that petitioner was "engaged in acts appropriate and necessary to bring the property into proper condition for operation" and thus entitled to tax exemption for charitable organization).

The Appraisal District also argues that there is no evidence that the land use study "relates to the construction of the improvement" as required by the tax code. It contends that Vet to Vet "conceded that the so-called 'land use study' related only to whether [its property] was to be designated as a landmark...." The Appraisal District does not cite where this concession

may be found in the record. And we do not construe Johnson's testimony to say that Vet to Vet did not want to be designated a historical landmark cemetery. Instead, his testimony was that he fought the historical landmark designation because it would have meant that Vet to Vet could not build on its property.

Viewed in the light most favorable to the jury's verdict, we conclude that the evidence is legally sufficient to support the jury's answer to question one.

**B. Is the evidence legally sufficient to support the jury's answer to question two?**

Question two of the jury charge asked: Were the incomplete improvements designed and intended to be used exclusively by a qualified charitable organization?

Answer "Yes" or "No."

Answer: <u>Yes</u>

■ The Appraisal District next contends that the evidence is legally insufficient to support the jury's finding that the "incomplete improvements" were "designed and intended to be used exclusively by a qualified charitable organization." It contends that Vet to Vet did not offer any evidence that the use of its property, and, more specifically, the building it intended to place on the property, was related to Vet to Vet's charitable purposes as stated in its charter.[3]

---

**3.** The evidence showed that Vet to Vet's purposes as stated in its articles of incorporation are

to perform charitable activities within the meaning of Internal Revenue Code Section 501(c)(3) and Texas Tax Code Section 11.18(c)(1). Specifically, the Corporation is organized to provide services for the benefit of disabled American Veterans who are resident in hospitals operated by the United States Veterans Administration. The Cor-

poration shall provide recreation and entertainment for such veterans and such other services and goods as it deems appropriate for the purposes of improving the living conditions and general state of welfare of such veterans.

The Appraisal District argues that there is no evidence that Vet to Vet's use of the property is related to its charitable purposes because its charter states that its purpose is to assist disabled veterans in VA hospitals, but

The Appraisal District argues that the tax code requires that the use of the land must further the organization's charitable purposes. But the court's charge did not instruct the jury that the "incomplete improvement" must relate to Vet to Vet's charitable purposes as stated in its charter, and the Appraisal District did not object to the charge on this basis. The Appraisal District contends that the jury charge "reflects these requirements" in the definition of "qualified charitable organization" and "generally in question two." But the charge asked only whether "the incomplete improvements [were] designed and intended to be used exclusively by a qualified charitable organization." And it defined "qualified charitable organization" as an organization that "provides support to elderly persons, including the provision of recreational or social activities and facilities designed to address the special needs of elderly persons, or to the handicapped, without regard to the beneficiaries' ability to pay."

■ On original submission, we stated that because the Appraisal District did not request an instruction in the charge stating that the use of Vet to Vet's land must further its charitable purposes as stated in its charter, we measure the sufficiency of the evidence in light of the charge that was given. *See Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 220–21 (Tex.2005); *Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 715 (Tex.2001); *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000). In its motion for rehearing, the Appraisal District argues that we did not analyze this issue under the appropriate standard. It contends that because it moved for directed verdict and judgment notwithstanding the verdict, it was not required to request the

tax code instruction or object to its absence to have a "full no-evidence review based on substantive Texas law."

Although we agree that motions for directed verdict and judgment notwithstanding the verdict preserve a no-evidence review, we disagree that those motions require us to review the sufficiency of the evidence based on a definition that was not provided to the jury. In its motions for directed verdict and judgment notwithstanding the verdict, the Appraisal District argued only that there was no evidence to support the submission of question two. And question two did not require the jury to find that Vet to Vet's use of the land furthered its charitable purposes as stated in its charter. "[T]he cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it." *Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990–A, Ltd.,* 249 S.W.3d 380, 387 (Tex.2008). If the Appraisal District had requested an instruction based on substantive Texas law and the trial court had erroneously denied that request, we would properly judge the sufficiency of the evidence based on the instruction that the trial court should have given. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 525 (Tex.2002). But the Appraisal District did not request such an instruction and did not object to the charge that was given. Consequently, we judge the sufficiency of the evidence in light of the charge that was given. *See Romero,* 166 S.W.3d at 220–21; *Sturges,* 52 S.W.3d at 715; *Osterberg,* 12 S.W.3d at 55.

Sarles, the Appraisal District's employee and expert, agreed that Vet to Vet pro-

---

Johnson testified that Vet to Vet intended to use the building it wanted to place on its

property to assist homeless veterans.

vides support to elderly persons or to the handicapped without regard to their ability to pay. Additionally, Johnson testified in detail that Vet to Vet was formed to assist disabled veterans, that Vet to Vet's charitable activities related to disabled veterans, and that the building it intended to place on the property was going to be used exclusively by Vet to Vet to assist those veterans. We conclude, therefore, that the evidence is legally sufficient to support the jury's answer to question two.

We resolve appellant's first issue against it.

## FACTUAL INSUFFICIENCY OF THE EVIDENCE

In its second issue, the Appraisal District argues that the evidence is factually insufficient to support the jury's answers to questions one and two. A party must raise factual insufficiency of the evidence in a motion for new trial to preserve the issue for appellate review. TEX.R. CIV. P. 324(b)(2). The Appraisal District did not raise factual insufficiency in its motion for new trial, and, as a result, that issue is not preserved for our review.

We resolve appellant's second issue against it.

## CONCLUSION

We affirm the trial court's judgment.