## CITY OF LONGVIEW V. MARKHAM-MCREE MEMORIAL HOSPITAL.

No. 7695. Decided April 9, 1941.
Rehearing overruled July 9, 1941.
(152 S. W., 2d Series, 1112.)

*H. P. Smead, Bailey M. Salmon* and *Earl Roberts,* of Long-view, for plaintiff in error.

The renting or leasing of office space to doctors in a hospital building is not so related to the object of the hospital as to come within the general design of a charitable enterprise, because such use is not *exclusive use* under the meaning of Section 2 of Article 8, of the Constitution, as such space was used by said doctors to carry on their private practice. Red v. Johnson, 53 Texas 284; Santa Rosa Infirmary v. City of San Antonio, 259 S. W. 926; State v. Settegast, 254 S. W. 925.

*Abner V. McCall* and *R. Matt Dawson,* both of Longview, for defendant in error.

The agreed statement of facts upon which this case was tried clearly shows that the presence of the physicians in the hospital building was necessary to accomplish the main charitable purpose of the hospital, and it was not error for the Court of Civil Appeals to hold that the property sought to be taxed was exclusively used for hospital purposes. Benevolent Protective Order of Elks v. City of Houston, 44 S. W. (2d) 488; Baptist Hospital v. Nashville, 3 S. W. (2d) 1059; First Baptist Church v. Ft. Worth, 17 S. W. (2d) 130.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted by the City of Longview as plaintiff against Markham-McRee Memorial Hospital, a corporation, as defendant. The purpose of the suit was to recover taxes duly assessed and levied against a hospital building in the City of Longview owned by the corporation. The case was tried upon an agreed statement of facts and resulted in a judgment in favor of defendant. This judgment was affirmed by the Court of Civil Appeals, 134 S. W. (2d) 793.

Defendant corporation is admittedly a charitable institution, and is engaged in the operation of the hospital in question as a charitable enterprise. It is clearly such an institution as comes within the provisions of Section 2 of Article 8 of the Constitution. The application of that provision of the Constitution is involved here. For the purpose of clear understanding, that constitutional provision has been paraphrased by the Supreme Court in this language: "'* * * But the Legislature may, by general laws, exempt from taxation * * * all buildings used exclusively and owned by * * * institutions of purely public charity.'"

The agreed statement of facts as touching the question for decision are these:

"Drs. McRee and Bergman have offices in the hospital. They likewise treat many of their patients in the hospital and use its equipment in so doing, but the hospital charges their patients on the same basis and in the same manner as it does the patients of all doctors. They have no privileges in the use of the hospital or its equipment that any other ethical doctor does not have in the treatment of his patients there. The sole distinction between these two doctors and visiting doctors is that these two have offices in the hospital. For these offices they pay the hospital a monthly rent of $100.00, treat the charity patients of the hospital without charge, and remain on hand at the hospital day and night as house physicians to take care of all emergency cases coming to or already in the hospital, whether such patients be their own patients, charity patients, or the patients of other physicians. It is necessary for the proper operation of the hospital that a doctor be at the hospital subject to immediate call at all times. During the past twenty-one months they have rendered services to charity patients in hospital while acting as house physicians to the amount of $1,888.50 without charge whatever, as well as many services to the patients of other physicians in the hospital when such patients needed immediate care in the absence of the physicians of their choosing. The hospital pays these doctors nothing for these services to charity patients and services performed as house physicians; they charge their own patients which they treat in and out of the hospital for their services without any connection whatever with the charges made by the hospital for its services. The hospital is no more connected or interested in the fees charged by its house phy-

sicians than it is in fees charged by visiting doctors. It is the established rule that if the patient in the hospital is unable to pay both his hospital bill and physician's fee, then the hospital gets paid first before the physicians accept a cent. There is no connection in the bookkeeping of the hospital and the bookkeeping of its house physicians nor of the bookkeeping of any other doctor who treats some of his patients there. * *

"It is also agreed that the sole question at issue is whether the above fact situation creates such a relationship as will destroy the exemption of the charitable institution as to this property."

That Drs. McRee and Bergman occupy and use offices in the hospital for the furtherance of their private practice is not questioned. It is contended by defendant, however, that because the presence of a house physician in the hospital is necessary at all times, and that as these two doctors perform this service for the institution, for which they receive no compensation, their occupancy of offices in the hospital does not have the effect of destroying the exemption claimed by defendant.

As counsel for defendant rely largely upon the case of Santa Rosa Infirmary v. City of San Antonio, 259 S. W. 926, we quote two general statements from that opinion:

"Exemptions from taxation are never favored, and in the construction or interpretation of a law extending exemption from taxation to any citizen or class of property all doubts are resolved against the exemption. Morris v. Masons, 68 Tex. 703, 5 S. W. 519; 23 R. C. L., 313."

"But, as the Constitution requires the property, as a prerequisite to its right to exemption, to be exclusively used by the charitable institution, it is apparent, if any part of it is rented out and the relation of landlord and tenant created, that very fact would necessarily destroy the exclusive use necessary to be retained by the owner to bring its property within the plain terms of the Constitution, and it has been therefore held, as it was in that case, and in State vs. Settegast (Tex. Com. App.) 254 S. W. 925, that the leasing of all or any part of a charitable institution's property to those not themselves engaged in a wholly charitable work, or the occupancy of even a part of the property by others under what

amounts to an equivalent situation, destroys the exempt character of the property, and it is plain that in those cases there could have been no other holding.

"The constitutional requirement is twofold; the property must be owned by the organization claiming the exemption; it must be exclusively used by the organization, as distinguished from a partial use by it, and a partial use by others, whether the others pay rent or not."

These quotations reflect the consistent holdings of our courts. Morris v. Masons, 68 Texas 703; City of Houston v. Scottish Rite Ass'n., 111 Texas 191, 230 S. W. 978; State v. Settegast, 254 S. W. 925; BPOE Lodge v. City of Houston, 44 S. W. (2d) 488 (Writ ref.).

A careful reading of the opinion in the Santa Rosa Infirmary case shows that the precise question here presented was not involved in that case. It will be noted the general discussion is prefaced with the following statement: "There is no claim here that any part of the hospital was leased out in the ordinary sense." The only circumstance in that case which in any way makes it similar to the present one was the fact that the St. Luke's Clinic and a drugstore occupied space in the hospital building. It is made perfeclty plain, however, that each of these was operated for charitable purposes, and were operated by persons who were in fact subsidiaries of the charitable owners. It will be observed that the opinion is directed almost entirely to a discussion of the proposition that the successful operation of a hospital enterprise necessarily presupposes "patients, surgeons, drugs, nurses, surgical equipment, clinics, and the usual accompaniments" of such an institution. It may also be said that the operation of a hospital presupposes the services of a house physician or physicians, but it cannot be said, in view of the very rigorous interpretation which has been given to our constitutional provision, that in making provision for such services, a substantial part of a hospital may be turned over to others to be used for their own private purposes, although rendering some service for the institution. It necessarily seems to us that use of offices in a hospital, as distinguished from use of the mere facilities of the hospital, by physicians for their own practice constitutes a partial use by them, as distinguished from an *exclusive* use by the institution, and this destroys the exemption.

It is agreed that the sole distinction between Drs. McRee and Bergman and visiting doctors is that these two doctors have their offices in the hospital. By this we undrestand that Drs. McRee and Gergman are engaged in an active general practice for profit just as other doctors in the City of Longview. It is further stipulated as follows:

"It is agreed that Drs. Bergman and McRee pay $100.00 monthly rent for their offices, and that they also as compensation for these offices perform services for charity patients to the extent of $1,888.50 and perform other services as house physicians in treating emergency cases in the hospital without pay."

"It is agreed that the reasonable market value of the offices which the doctors occupy does not exceed $100.00 per month."

We think this language clearly implies that these doctors are not occupying offices in the hospital solely by virtue of their relationship to the institution as house physicians, but are actually renting these offices for their own professional purposes; and the relationship of landlord and tenant naturally exists between them and the institution, just as it does between other doctors who rent offices and their landlords. The $100.00 per month is admittedly paid by them as *rent,* and it is agreed that the gratuitous services rendered by them to the institution and patients therein, other than their own, is additional "compensation" for these offices. This is no doubt due to the added privilege and prestige of occupying offices within the hospital, rather than in some commercial or private building. While it is true that the use of these offices results in a necessary contribution to the operation of the hospital, it seems to us quite obvious that the letting and occupancy of same is dominantly a commercial and private transaction. We therefore conclude that the property in question is not exempt from taxes under our Constitution.

The judgments of the Court of Civil Appeals and of the district court are reversed, and judgment is here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court April 9, 1941.

Rehearing overruled July 9, 1941.