

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS



PRICE DANIEL
ATTORNEY GENERAL

July 11, 1947

*affirmed by V-629*

Mr. Lee Nowlin
County Attorney
Hale County
Plainview, Texas

Opinion No. V-299

Re: Exemption from ad valorem
taxes of buildings and
land belonging to Hale
County Cooperative Hospi-
tal.

Dear Sir:

You have requested an opinion from this Department
as to whether or not the Hale County Cooperative Hospi-
tal is exempt from ad valorem taxes. This "Hospital",
as we shall hereafter generally term it, was chartered
pursuant to the provisions of Section 2A of Article
1302, R. C. S., which reads as follows:

"2A. Charitable corporations may be
created for the purpose, or purposes, of
owning and operating non-profit cooperative
hospitals, and for the purpose of provid-
ing a suitable place in the immediate lo-
cality where members and families of mem-
bers of such corporations may obtain medi-
cal, dental, health, surgical, nursing,
hospitalization, and related services and
benefits. Acts 1945, 49th Leg., p. 102,
ch. 70, § 1."

Article III of the Charter of the "Hospital"
states that "This corporation does not contemplate pecu-
niary gain or profit to the members hereof" and sets out
the corporate purposes of the "Hospital" in the language
substantially that of the statute quoted above.

Article VII of the Charter reads as follows:

"Section 1. This Corporation shall
have no capital stock, and consequently no
dividends, and any profit shall be used to
further the charitable purposes for which
it is created, and said Corporation owns
no property of any kind.

"Section 2. The persons signing these Articles of Incorporation shall be deemed members of the Corporation immediately upon the completion of the organization and new members may be admitted to membership in this Corporation under the terms and conditions of the By-Laws. Membership in this Corporation shall be evidenced by certificate of membership which shall be provided for in the By-Laws. Such certificate of membership shall not be assignable or transferrable except as provided in the By-Laws.

We quote the following from a letter from the manager of the "Hospital".

"Since the inception of this organization, our major effort has been expended in the construction of 17-bed hospital with Clinic facilities including X-ray, Laboratory, and doctors' offices. To date the hospital portion is incomplete, but the Clinic is in operation. The major portion of the patients treated here pay for services rendered; however, charity cases will be taken care of. The percentage of charity cases that we will be able to care for has not been determined.

"As you may know, these cooperative hospitals were started in answer to a very critical need for medical facilities in rural areas in Texas. They are not the complete answer, but they have gone a long way toward providing facilities and guaranteed incomes for properly qualified professional people in our southwestern rural areas. These professional people are the first requirements for good medical care at a price our rural people can afford to pay. Each of these hospitals expects to operate a prepayment plan which will insure the cost of medical care in the locality of the organization. This prepayment plan stabilizes the incomes of doctors and prevents extremely high cost of catastrophic illnesses of the patients."

Article VIII, Section 2 of the Constitution of the State of Texas has empowered the Legislature to exempt from taxation certain enumerated properties, among which

are " . . . institutions of purely public charity". In pursuance to this particular constitutional grant the Legislature enacted Section 7 of Article 7150, R. C. S., which effectuates exemption to the extent of the exemptive powers conferred by Article VIII, Section 2. Little Theatre of Dallas Inc. v. City of Dallas, 124 S. W. (2) 863; City of Wichita Falls v. Cooper, 170 S. W. (2) 777, error refused.

Section 7 of Article 7150 reads as follows:

"7.  Public charities. - All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not.  An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

It is clear that under the above section an institution can gain exemption for its "buildings . . . . together with the lands belonging to and occupied by such institutions" only if it is an "institution of purely public charity". We are faced at the outset with Opinion O-6792 of this Department which holds that corporations organized under Section 2A of Article 1302 are not institutions of "purely public charity" and are not within the exemption from payment of franchise taxes

which Article 7094 accords corporations "organized . .
. . for purely public charity". We will not reconsider
that question since it is not before us. We do not con-
sider that the opinion precludes the anomalous view that
the "Hospital" is an "institution of purely public char-
ity" within the meaning of that phrase as used in Ar-
ticle VIII Section 2 of the Constitution and in Section
7 of Article 7150 for the reason that a different ex-
emption is now being sought by virtue of a different
statute.

We are of the opinion that the question you pre-
sent is settled by the decision in <u>City of Palestine</u>
<u>v. Missouri Pacific Lines Hospital Ass'n.</u>, 99 S. W. (2)
311, writ of error refused. The court there held that
the Missouri Pacific Lines Hospital Association was
an "institution of purely public charity" and exempt
from taxation.

The Missouri-Pacific Lines Hospital Association is
the name borne by the corporation originally chartered
in 1915 as the International-Great Northern Railway Em-
ployees' Hospital. The second article of the original
charter reads as follows:

"Second. The purpose for which this
corporation is formed is for the support of
a benevolent and charitable undertaking, in
this: to provide medical and surgical treat-
ment and care for the employees of the Inter-
national and Great Northern Railway and all
persons engaged in the operation of the same
and its properties, whether or not in the
hands of Receivers, or however owned or oper-
ated hereafter, who may be injured or disabled
by accident or sickness while in such employ-
ment, to such extent only, and under such
rules and regulations as may be prescribed
from time to time by the Trustees and to fur-
nish such other and additional privileges
and benefits to said employees as may from
time to time be directed by the Board of
Trustees of this Association; provided that
such additional benefits and advantages shall
not be inconsistent with nor interfere with
the main object of said Association, as here-
before expressed, and to that end purchase,
erect and maintain suitable buildings for
hospitals or other purposes at suitable

points along the line of said railway and
its branches."

The sixth article provided that "there shall be no
capital stock of this corporation, but the necessary
funds therefor shall be raised in such manner as may be
provided for by the by-laws, . . ."

It was urged in International & G. N. Ry. Employ-
ees' Hospital Ass'n. v. Bell, 224 S. W. 311, that cer-
tain facts, i. e., membership in the association being
a condition of employment with fees therefor withheld
from employees salaries, showed that the hospital was
not a benevolent and charitable association but a mu-
tual benefit, health, and accident insurance associa-
tion. The court rejected this contention and held that
the Hospital Association was "a mutual benefit associa-
tion", and that "its contracts with its several members
cannot be regarded or construed as contracts of insur-
ance."

Since this decision was rendered (1920) and before
the decision in the City of Palestine case, supra, the
original charter of the International and Great Northern
Railway Employees' Hospital Association was amended.
The corporate name was changed to Missouri Pacific Lines
Hospital Association and article "Second" was amended by
inserting the word "officers" before "and employees" and
the word "maintainance" before "operation", and various
minor changes in wording were made. In addition the In-
ternational Great Northern Railroad" was defined for the
purpose of showing what officers and employees were en-
titled to the privileges of the association, and the fol-
lowing proviso was added:

"Provided, however, that the properties
now owned by this Association . . . having
been accumulated by means of contributions
made by present and former employees of the
International Great Northern Railway Company
and its predecessor companies, the employees
of that company and its successors, if any,
/shall be entitled/ to a preferential right
of use of such properties . . . . ; and if
and when the employees of other lines may be
admitted to the privileges and benefits of
this Association, they shall be so admitted
upon condition that by enjoying such privi-
leges and benefits and paying therefor they

shall not acquire or claim any property
rights, legal or equitable, in or to the
physical properties or assets of this As-
sociation which shall not be completely
terminated and obliterated by a withdrawal
of such privileges and benefits by the
Board of Trustees of this Association."

Thus there had been no change in the corporate pur-
pose or the corporate method of operation from the time
of the Bell case, supra, which would make the Associa-
tion any less "an association for mutual benefit" or
any more an "institution of purely public charity". In
the City of Palestine case, supra, the court simply re-
cites the facts of incorporation and operation without
designating the corporation as "an association for mu-
tual benefit". The court therefore does not specific-
ally deal with the possible effect of the benefit in-
uring to the members of the association as being des-
tructive of the "charitable" nature of the association;
however, it disposes of the matter by implication in
the following paragraphs:

"(4)  In Santa Rosa Infirmary v. City
of San Antonio, supra, the court said: 'While
it is stated in City of Houston v. Scottish
Rite, etc., Ass'n, supra, that, in order to
maintain its status as a purely charitable
institution, an organization claiming to be
such, and asserting an exemption from taxa-
tion, must make no private gain or corporate
profit, nothing more was intended than that
no private individual should reap a profit,
or where a corporation was the owner that
no distributable earnings in the shape of
dividends must accrue.'"

"(5)  In the case of Benevolent & P. O.
of E. Lodge v. City of Houston (Tex. Civ.
App.) 44 S. W. (2d) 488, 493, in construing
the expression 'purely public charity,' the
court said:  'The word "purely" is intended
to modify the word "charity" and not the
word "public," so as to require the institu-
tion to have a wholly altruistic quality and
exclude from it every private or selfish in-
terest or profit or corporate gain * * * In
law, the word "purely" is used in the sense

of and equivalent to "only," "wholly,"
"exclusively," "completely," "entirely,"
and "unqualifiedly."'"

These paragraphs and a quotation from City of
Houston v. Scottish Rite Benevolent Ass'n., 111 Tex.
191, 230 S. W. 978, 981, to the effect that "Charity
need not be universal to be public" likewise disposed
of the contention that the limitation of the primary
purpose of the charity to a class, i.e., railroad em-
ployees and their families, prevented the institution
from being one of "purely public charity."

It must be emphasized, however, that in point of
fact the Missouri Pacific Lines Hospital did do some
charitable work.  It is true that "the rendition of
services to non-members has always been incidental to
the main purposes of said association . . . ."; but
the Hospital had at all times during the period for
which taxes were sought given first aid to the members
of the City of Palestine police and fire department
and cared for the charity patients of the county.
"Regardless of race, creed or financial condition or
any other ground of distinction, no such case /emer-
gency/ has ever been turned away from said hospital,
. . . . . (Emphasis added)  "The reasonable value of
first aid treatments so rendered to the policemen and
firemen and county charity patients would average ap-
proximately $350 a year.  The aggregate amounts re-
ceived . . . for the hospitalization . . . of the fore-
going classes of patients not members of the associa-
tion were wholly inadequate to maintain the hospital
and other services rendered, and such services could
not have been rendered except through the monthly as-
sessments paid by said members as aforesaid . . . ."

The court no where considers the value of these
charitable services in relation to the value of ser-
vices rendered to members of the association.  It
seems safe to say that the percentage of charitable
cases was small in comparison with the number of pay
patients or members of the association; yet the exemp-
tion was still accorded the association.

The fact that the members of the Hale County Coop-
erative Hospital have voluntarily associated themselves
together for the purposes of establishing and maintain-
ing a hospital in no way militates against an exemption

of the "Hospital" property. Of course, until such time as charitable cases are being treated there can be no exemption as it is well settled that a mere prospective use for charitable purposes is not sufficient. 2 A.L.R. 545. Likewise it is only by exclusive use of the property that the charitable organization may gain exemption from taxation. It has been held that exemption was lost where a hospital rented offices in the hospital building to physicians for use in their general practice. City of Longview v. Markham - McRee Memorial Hospital, 152 S. W. (2d) 1112. Moreover where a laboratory technician used a part of the hospital laboratory in doing a small business of his own the exemption was lost notwithstanding the fact that he paid no rent and that the hospital did not share in his private profits. Markham Hospital v. City of Longview, et al, 191 S. W. (2d) 695, error refused. These two cases involve use by a third person for private purposes and in no way conflict with the holding in Santa Rosa Infirmary v. City of San Antonio, Comm. App., 259 S. W. 926, to the effect that the fact that the major portion of the rooms in a hospital are used by pay patients does not result in the loss of the exemption accorded institutions of purely public charity provided the other requisites of exemption are met.

Assuming, then, that the Hale County Cooperative Hospital can meet the threefold requirements of ownership of the property, bonafide charitable purpose as evidenced by actual charitable work, and exclusive use of the property by the charitable institution itself, it is the opinion of this Department that the buildings of the Hale County Cooperative Hospital and the grounds on which said buildings are located are exempt from ad valorem taxes.

### SUMMARY

The buildings belonging to the Hale County Cooperative Hospital and the grounds on which said buildings are located are exempt from ad valorem taxes if said buildings and grounds are owned and exclusively used by the Hale County Cooperative Hospital for a bona fide charitable purpose as evidenced by actual charitable work. Art. VIII, Sec. 2 of

the Texas Constitution; Sec. 7, Art. 7150, R. C. S.; <u>City of Palestine v. Missouri Pacific Lines Hospital Ass'n.</u>, 99 S. W. (2d) 311.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Marietta Creel*

Mrs. Marietta Creel
Assistant

MC:mrj

APPROVED

*Price Daniel*

ATTORNEY GENERAL