**LAMB COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**SOUTH PLAINS HOSPITAL–CLINIC, INC., Appellee.**

No. 07–83–0163–CV.

Court of Appeals of Texas, Amarillo.

March 29, 1985.

Rehearing Denied April 29, 1985.

Calame, Linebarger & Graham, Russell R. Graham, Austin, for appellant.

Smith, Baker, Field & Clifford, Inc., Edward R. Smith, Blumrosen & McDonald, J.R. Blumrosen, Lubbock, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

DODSON, Justice.

The trial court rendered a declaratory judgment determining that certain property owned by the South Plains Hospital-Clinic, Inc. is exempt from ad valorem taxes pursuant to Tex.Tax Code Ann. § 11.18 (Vernon 1982) * and Tex. Const. art. VIII, § 2. After a bench trial, the court made findings of fact and conclusions of law. Appealing from the judgment, the Lamb County Appraisal District challenges three findings of fact and one conclusion of law and claims the trial court erroneously ad-

---

* All further references to sections refer to Tex. Tax Code Ann. (Vernon 1982), in effect at all times pertinent to this case.

mitted one exhibit into evidence. Concluding that the appraisal district's points of error do not present cause for disturbing the judgment, we affirm.

By its first three points of error, the appraisal district claims the evidence is factually insufficient to support the trial court's findings that: (1) the hospital is organized exclusively to perform charitable purposes by providing medical care without regard to the beneficiaries' ability to pay; (2) the hospital is operated in a way that does not result in realization of private gain resulting from payment for salary or other compensation in excess of a reasonable allowance for salaries or other compensation for services rendered or realization of any other form of private gain; and (3) any non-charitable functions performed by the hospital are only incidental to the organization's charitable functions.

In its fourth point of error, the appraisal district maintains that the trial court erred by admitting "Plaintiff's Exhibit Number 5" over its objection "that no proper predicate had been laid to show the Exhibit's admissibility." By its fifth point of error, the appraisal district claims that the trial court erred by rendering judgment for the hospital based on the court's conclusion of law that the hospital "is so organized and operated as to qualify for tax exemption as a charitable organization, within the meaning of section 11.18, Texas Property Tax Code, and as an institution of purely public charity, within the meaning of article 8, section 2, Texas Constitution" because that "conclusion of law is neither supported by the facts nor the law."

Tex. Const. art. VIII, § 2 provides, in part, that the Legislature may, by general law, exempt certain property from taxation, including all buildings used exclusively and owned by institutions of purely public charity. The phrase "institution of purely public charity" is not defined in the Constitution. However, in *City of Houston v. Scottish Rite Benev. Ass'n.*, 111 Tex. 191, 230 S.W. 978, 981 (1921), the court suggested the following definition:

[T]he Legislature might reasonably conclude that an institution was one of "purely public charity" where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

The court further explained that:

*Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state.* The care of those unable to provide for themselves certainly may devolve on those of the same community or state. [emphasis added]

Since the court's decision in *City of Houston*, numerous Supreme Court decisions have acknowledged, reaffirmed, and further explained the suggested guidelines. In that regard, the most recent decision by the Supreme Court is *City of McAllen v. Ev. Luth. Good Sam. Soc.*, 530 S.W.2d 806 (Tex.1975). That case and others will be discussed in this opinion as we resolve the appraisal district's points of error and contentions.

Pursuant to the constitutional provisions, the above-stated guidelines and the court's explanations and interpretations of those guidelines, the Legislature implemented article VIII, section 2 of the Constitution by enacting section 11.18 of the Texas Tax Code Annotated. Section 11.18(a) provides that a qualified charitable organization is entitled to the ad valorem tax exemption on buildings and tangible personal property owned by the organization which are used exclusively by the organization. However, in regard to exclusive use, the exemption is not lost where the property is used by persons who do not qualify as charitable organizations, if that use is *incidental* to the qualified charitable organization's use and that use is limited to activities that benefit the beneficiaries of the

qualified charitable organization which owns or uses the property.

▆▆▆ To qualify as a charitable organization under section 11.18(c) and 11.18(d) of the statute, the organization must:

(1) Be organized exclusively to perform charitable purposes and engage exclusively in providing medical care without regard to the beneficiaries' ability to pay; provided however, in regard to *exclusive* purpose and performance, the charitable organization's exemption is not lost by performing non-charitable functions, if those functions are *incidental* to the organization's charitable functions;

(2) Be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain; and

(3) By charter, bylaws, or other regulation adopted to govern the organization's affairs, pledge its assets for use in performing the organization's charitable functions and "direct that on discontinuance of the organization by dissolution or otherwise, the assets are to be transferred to this State or to an educational, religious, charitable or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended."

In this instance, the record shows that the hospital is located in Amherst, Lamb County, Texas. The town of Amherst has approximately 900 to 1000 people. The hospital was originally chartered as a nonprofit cooperative hospital in 1940 or 1941. In 1964, by charter amendment, the hospital was incorporated under the Texas Non-Profit Corporation Act. The hospital's stated purpose provides, in part:

*To establish, maintain, and operate on a non-profit basis an open-staff medical hospital of sufficient capacity to serve the needs of the City of Amherst and County of Lamb and the sur-rounding area; which hospital and all of its facilities shall at all times be open for use by and of all qualified Doctors of Medicine as determined by Board of Trustees, without limitations as to specialty, in the treatment and care of their patients; to emphasize in the treatment of patients the general practice of medicine and the science and art of dealing with the prevention, cure and alleviation of disease and human suffering; to acquire, erect, maintain, and operate a benevolent and public charitable hospital in such city and county for the purpose of administering to the sick, to the infirm, to the helpless, to the elderly, to the maimed and to the afflicted of all creeds, colors, and nationalities as may be brought or presented at such hospital for the treatment and nursing care, regardless of their ability to pay....* [emphasis added]

The hospital is governed by a Board of Directors consisting of seven members. The term of each member of the Board is three years. The directors are elected to the board from the membership. Any person over twenty-one years of age, who has used the hospital facilities, is a voting member of the corporation. A voting member is eligible to serve on the Board of Directors. However, no member of the hospital's staff or other employee is qualified to serve as a director while so connected with the corporation. In that regard, the evidence shows that no doctor has ever served on the Board of Directors.

The hospital has an open-staff policy. There are five doctors and one dentist on the medical staff. The dentist lives in Lubbock, Texas (a distance of approximately fifty miles), and practices at the hospital only one day a week. One of the medical doctors lives and practices in Lubbock; however, he travels to Amherst twice a week to read X-ray film and perform consulting work. No applying physician has ever been denied staff privileges at the hospital.

The evidence further shows that the hospital has considerable difficulties in obtain-

ing doctors for the medical staff. One member of the Board of Directors testified that he had served on the board for approximately twelve years, that during that period of time he personally attempted to recruit approximately fifteen different doctors for the staff, and that he had been able to help in obtaining only one doctor.

Four doctors work at the hospital on a regular day-to-day basis. The doctors are compensated under a written arrangement entitled "Hospital and Medical Staff's Working Agreement." That arrangement states:

I. Hospital agrees to furnish.

1. Office Space

2. Utilities

3. Telephone service for professional use

4. Licensed vocational nurse, paying all salary and fringe benefits

5. Furniture, equipment, and instruments for examining rooms

6. Furnishings for personal office

7. All medical supplies, medications and injectable drugs for treatment patients.

8. Well-stocked pharmacy for patient prescriptions

9. Diagnostic facilities such as Laboratory, X-ray, E.K.G., ultra sound, and nuclear medicine.

10. Services of dietary consultant for outpatients

11. Complete bookkeeping services including patient registration, billing, collection, insurance filing, typing and transcription of dictation.

12. Total housekeeping services

13. Noon meal on working days

II. For services listed above South Plains Hospital-Clinic, Inc. will retain 10% of *collected Dr. fees.* [emphasis added]

The record further shows that one doctor on the staff has been with the hospital since the mid-1950s. Initially, that doctor's compensation arrangement with the hospital was sixty percent to the doctor and forty percent to the hospital on collected doctor's fees. Later, the arrangement was revised to a seventy/thirty percent split. Presently, that doctor is compensated under the ninety/ten percent arrangement.

As the result of many factors, it is exceedingly difficult for the hospital to obtain and retain full-time staff doctors who are willing to live and practice in Amherst. By increasing the compensation to the doctors, the hospital is able to obtain and retain the services of the four full-time doctors presently on the staff. One of the staff doctors was recruited by a $60,000.00 per year guarantee. However, that doctor's present compensation is under the ninety/ten percent arrangement.

It is a matter of common knowledge and the evidence in this instance shows that it is not feasible to operate a hospital without doctors. It is also a matter of common knowledge that it is very difficult to obtain and retain competent doctors in the small towns and rural areas of the state. In that regard, the evidence shows that the hospital has never been able to attract as many doctors as its administrative and medical staff feel it needs.

The record further shows that the hospital annually has approximately 16,000 outpatient visits and 1100 inpatient hospitalizations. Although the inpatient and outpatient count includes repeat visits, the evidence shows 517 persons were charity patients in 1981. Charity services rendered in 1981 by the hospital were $121,724.98 to inpatients and $9,813.36 to outpatients. On the average, the hospital annually renders services in excess of $100,000.00 to charity patients. Additionally, the hospital has an annual bad debt rate of fifteen percent.

The hospital receives no funds from any source other than paying patients. Nevertheless, the hospital's charges for services rendered to patients is generally lower than charges at other hospitals in the immediate area (*i.e.,* Littlefield and Muleshoe). In that regard, there are no government-owned and operated hospital facilities in the immediate area. The privately-owned hospital in Littlefield (which is the only hospital relatively near to the Amherst

hospital) does not always accept charity patients. The hospital in question has never refused a charity patient. Furthermore, the record shows that the hospital is classified as a charity hospital under the provisions of I.R.C. § 501(c)(3) (West Supp.1984).

In the hospital's area, there are a number of Spanish-speaking patrons. Three of the hospital's four full-time staff speak Spanish. In the recent past, the area has suffered an unusually high infant mortality rate. By directing its efforts to obtaining an OB/GYN doctor, the hospital has effectuated a reduction in the infant mortality rate. The hospital's efforts, in that regard, were not profit motivated, since the delivery of babies is one of the most unprofitable services rendered by the hospital.

■ Whether the hospital in question is a qualified charitable organization (*i.e.*, an institution of purely public charity) is one of fact. *See B.P.O.E. Lodge No. 151 v. City of Houston*, 44 S.W.2d 488, 493 (Tex. Civ.App.—Beaumont 1931, writ ref'd). In this instance, the trial court's expressed and implied findings of fact support its judgment. On appeal, the appraisal district directly challenges only three of the expressed findings of fact.

The appraisal district's contentions under the first three points of error (which challenge the factual sufficiency of the evidence to support findings numbered one, three, and seven) are primarily based on its assertion that the hospital's standard of proof to establish tax-exempt status is "beyond any doubt." To support that assertion, the appraisal district primarily relies on a statement by the courts in *City of Longview v. Markham-McRee Memorial Hosp.*, 137 Tex. 178, 152 S.W.2d 1112 (1941) and *Santa Rosa Infirmary v. City of San Antonio*, 259 S.W. 926 (Tex.Comm'n App. 1924, judgmt adopted).

The appraisal district's reliance is misplaced. Texas recognizes only three standards of proof. Those standards are: "beyond a reasonable doubt" in criminal cases; "by clear and convincing evidence" in the termination of parental rights and involuntary mental commitment cases; and "by a

preponderance of the evidence" in all other civil cases. *See In re G.M.*, 596 S.W.2d 846 (Tex.1980); *State v. Addington*, 588 S.W.2d 569 (Tex.1979); *State v. Turner*, 556 S.W.2d 563 (Tex.1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1499, 55 L.Ed.2d 525 (1978).

■ In *City of Longview* and *Santa Rosa* the courts did not establish a different standard of proof (*i.e.*, beyond any doubt) for exempt status in tax cases. In those cases, the courts merely acknowledged that principle of law which states:

Exemptions from taxation are never favored, and in the construction or interpretation of a law tending exemption from taxation to any citizen or class of property all doubts are resolved against the exemption.

*City of Longview v. Markham-McRee Memorial Hosp.* 152 S.W.2d at 1113 (quoting *Santa Rosa Infirmary v. City of San Antonio*, 259 S.W. at 931). That principle states a rule of construction and interpretation rather than a standard of proof.

■ In this instance, the standard of proof is by a preponderance of the evidence. Consequently, in determining the appraisal district's factual sufficiency challenges, we must consider all of the evidence in favor of and adverse to each challenged finding to ascertain if that finding is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973).

By its first point of error, the appraisal district challenges the trial court's first finding of fact. That finding reads: "South Plains Hospital-Clinic, Inc., is organized exclusively to perform charitable purposes by providing medical care without regard to the beneficiaries' ability to pay." The appraisal district claims that finding is "against the great weight" of the evidence. Under this point of error, the appraisal district argues that the hospital is not organized exclusively to perform charitable purposes by providing medical services without regard to the beneficiaries' ability

to pay because in actual practice, the hospital has failed to follow the stated purpose. To support its argument, the appraisal district relies on the testimony of one patron who claimed the hospital required him to make a deposit before his wife was admitted to the hospital to give birth to a baby.

Even if we assume arguendo that the hospital required the patron to make a deposit before admitting his wife, that evidence does not establish that the hospital abandoned its purpose. The evidence further shows that the patron was employed, had insurance and had regularly used the hospital facilities. When asked if he considered himself or his wife a charity patient, the patron responded, "Well, I would like to be." From the record, it is obvious that the patron in question had the ability to pay and would pay when required to do so. Furthermore, the overwhelming evidence in the record shows that no patient has ever been denied needed medical or hospital services because of inability to pay. Receiving income from paying patients does not destroy the organization's charity status. *See City of McAllen v. Ev. Luth. Good Sam. Soc.,* 530 S.W.2d at 809.

The appraisal district further argues that the hospital facilities are not exclusively used for the hospital's stated purpose because the hospital has no stated admissions policy or policy for determining charity status. However, the record shows that patients are admitted to the hospital on the medical staff's directions when the patient's doctor determines that the patient needs hospital care. When that medical determination is made, the patient is admitted to the hospital without regard to the patient's ability to pay. Since the hospital cannot practice medicine, per se, only its staff doctors can make the medical determination as to whether a patient needs hospital care.

The patient's charity status is determined from the staff's knowledge of the patient's ability to pay (*i.e.,* by the patient's prior ability to pay for previous treatment) and from information furnished by the patient in the "Information Sheet" which includes information as to employment, insurance, and other similar matters. Thus, the record shows that the hospital's admission policy and its implementation of that policy in actual practice does not contravene the hospital's stated purpose. Consequently, after considering all of the evidence in favor of and contrary to the trial court's first finding of fact, we conclude that the challenged finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. The appraisal district's first point of error is overruled.

By its second point of error, the appraisal district claims the trial court's third finding of fact is "against the great weight" of the evidence. The third finding of fact reads:

3. South Plains Hospital-Clinic, Inc., is operated in a way that does not result in realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain.

Under this point, the appraisal district contends the third finding is erroneous because the record shows two types of private gains that destroy the hospital's tax-exempt status.

The appraisal district argues that the first type of "private gain is medical treatment provided at no charge to certain individuals solely because of their relationship to the [h]ospital or the medical staff." In that regard, one staff doctor, who had been with the hospital since 1954, testified that he occasionally did not charge some individuals such as employees of the hospital, or members of the employee's family, or a long-time friend for services rendered. However, there is nothing in the record to show the doctor's no-billing practice occurred frequently or for any substantial amount of service rendered. The record does show the practice occurred only occasionally over the years (*i.e.,* approximately 18 years) that the doctor had been at the hospital. Thus, even if we assume arguen-

do that the doctor's practice of occasionally not billing some individuals is a non-charitable function of the hospital, we are persuaded that those functions are *de minimis* and merely incidental to the organization's charitable functions. *See* section 11.-18(a).

Next, the appraisal district argues that the doctors' compensation arrangement with the hospital constitutes "private gain" to the doctors because the hospital retains only ten percent of the doctors' collectible fees for overhead services furnished the doctors rather than a forty percent amount which doctors normally have to pay for overhead in private practice. However, in that regard, section 11.18(c)(2) provides that the organization must be operated in a way that does not result in "realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered."

■ In this instance, the record shows, as we stated above, that Amherst is a town of approximately 900 to 1000 inhabitants. The town is located approximately fifty miles from Lubbock in a rural area of Texas. It is extremely difficult to obtain and retain the services of doctors in Amherst. It is a matter of common knowledge and the record in this instance shows that it is not feasible to operate a hospital without doctors. Thus, from the evidence, we are persuaded that the hospital's compensation arrangement with the doctors is reasonable and not excessive under the circumstances. Consequently, after considering all of the evidence in favor of and contrary to the trial court's third finding of fact, we conclude that the challenged finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. The appraisal district's second point of error is overruled.

By its third point of error, the appraisal district challenges the trial court's seventh finding of fact. That finding reads: "Any noncharitable functions performed by South Plains Hospital-Clinic, Inc., are only incidental to the organization's charitable

functions." Under this point of error, the appraisal district contends that the trial court's third finding of fact is "against the great weight of the evidence" because the evidence establishes beyond any doubt that: (1) the hospital's only source of income is from paying patients; (2) the hospital's so-called "charity" is its fifteen percent of uncollectible bills; and (3) that the hospital's small percentage of charity patients shows that the hospital's primary purpose is to treat paying patients and that any "charity" is purely incidental to its primary purpose.

■ We acknowledge that the record shows that the hospital's only source of income is from paying patients; however, that fact does not destroy the hospital's charity status. *See City of McAllen v. Ev. Luth. Good Sam. Soc.*, 530 S.W.2d at 810. We disagree that the evidence establishes that "the hospital's so-called 'charity' is its fifteen percent of uncollectible bills." The record shows that in addition to the usual fifteen percent rate of uncollectible bills, the hospital provided charity to 517 persons in the year of 1980 alone and that over a two-and-one-half-year period beginning in January 1980 and ending in June 1982, the hospital provided $248,307.76 of services to charity patients.

■ We further disagree that the hospital's small percentage of charity patients shows that the hospital's primary purpose is to treat paying patients and that any "charity" is purely incidental to its primary purpose. The record shows that eight to fifteen percent of the hospital's patients were charity patients. However, as the court stated in *City of McAllen*:

[I]t is well settled *that the fact that paying patients predominate over those unable to pay does not detract from the charitable nature of the service rendered.... Reliance upon percentages of paying patients versus nonpaying patients, however, should not be the controlling factor.* With the advent of present day social security and welfare programs, the traditional concept of

charity, involving the extension of free services to the poor and alms-giving, will be rarely found since wide ranging assistance is available to the poor under such programs. Furthermore, the courts have defined charity to be something more than mere alms-giving or the relief of poverty and distress. [emphasis added]

530 S.W.2d at 810. The ultimate consideration is whether this organization has assumed "to a material extent, that which otherwise might become the obligation or duty of the community or state." *Id.* In this instance, the evidence shows that the hospital has assumed that obligation to a material extent.

■ Even though the appraisal district's contentions under its third point of error do not directly challenge the trial court's third finding of fact, we have considered all of those contentions and overrule them. Furthermore, we have considered all of the evidence in favor of and contrary to the trial court's seventh finding of fact, and conclude that the finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Consequently, the appraisal district's third point of error is overruled.

By its fifth point of error, the appraisal district claims that the trial court erred by rendering judgment for the hospital based on the court's conclusion of law that the hospital "is so organized and operated as to qualify for tax exemption as a charitable organization, within the meaning of section 11.18, *Texas Property Tax Code,* and as an institution of purely public charity, within the meaning of Article 8, Section 2, *Texas Constitution*" because that "conclusion of law is neither supported by the facts nor the law." The appraisal district's contentions under this point of error are related to its contentions and arguments made under the first three points of error.

In summarizing its contentions under the fifth point of error, the appraisal district states that: (1) the evidence presented in the trial court wholly fails to support the findings and conclusions of the trial court; (2) the "evidence shows beyond a doubt that the operation of Appellee institution results in substantial private gain to both Doctors and others;" (3) "the properties owned by Appellee are not used exclusively by it for its alleged 'charity' functions;" (4) the "evidence shows that in actual practice patients of Appellee institution are not admitted without regard to their ability to pay;" and (5) "the evidence shows that such 'charity' as may be provided by Appellee, if any, is purely incidental to its primary purpose which is to provide local Doctors with a facility from which to conduct their practices in treating patients who pay in full for such treatment."

The appraisal district's first contention under this point of error is broad, general, and actually presents nothing further for review. The appraisal district's second contention was considered, discussed, and overruled by our disposition of the appraisal district's second point of error.

By its third contention under this point of error, the appraisal district renews the claim that the hospital's facilities are not exclusively used for the hospital's alleged charity functions. In that regard, the appraisal district argues that the use in not exclusive because the doctors are provided office space in the hospital facilities and other services necessary to conduct a private medical practice. In that connection, the district claims the furnishing of office space and the other services is tantamount to a lease of the hospital facilities which destroys the property's exempt status. To support its position, the appraisal district relies on *City of Longview v. Markham-McRee Memorial Hosp.,* 137 Tex. 178, 152 S.W.2d 1112 (1941).

In *City of Longview,* the court determined that the organization did not qualify for tax-exempt status because two doctors rented office space from the organization for $100.00 per month and conducted their independent, private medical practice from those office facilities. In that regard, the court pointed out that even though the doctors performed certain functions of

house physician, they were not, in fact, house physicians or subsidiaries of the charitable owners, but that the charitable organization had turned over to the doctors a substantial part of the facilities to be used by the doctors for their own private purposes.

 In this instance, and as the court pointed out in *Santa Rosa Infirmary v. City of San Antonio*, 259 S.W. at 932, "there is no claim here that any part of the hospital building was leased out in the ordinary sense." In that connection, the record shows there is no landlord-tenant relationship between the hospital and the doctors. Furthermore, the evidence shows that the doctors performed all of the functions of house physicians. The hospital owns and operates all of the facilities. The record does not show that the hospital has turned over to the doctors any part of its facilities. We acknowledge that the doctors do practice at the hospital facilities, that the hospital provides the doctors with the necessary services for the doctors to treat patients at the hospital facilities, and that the hospital retains ten percent of the collectible fees charged for the doctor's services rendered to the patients. However, that arrangement does not destroy the hospital's tax-exempt status, since the doctors' services are essential and incidental to the hospital's charitable functions. *See* section 11.18(a).

By its fourth contention under the fifth point of error, the appraisal district claims the evidence shows that in actual practice patients are not admitted to the hospital without regard to their ability to pay. In resolving the appraisal district's contentions under its first three points of error, we pointed out that the great weight and preponderance of the evidence shows that the hospital has never denied needed medical or hospital services to any patient because of inability to pay.

By its fifth contention under the fifth point of error, and relying on *Aransas Hospital, Inc. v. Aransas Pass Ind. Sch. Dist.*, 521 S.W.2d 685 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.), the appraisal district claims the hospital should be denied tax-exempt status because the hospital is not being operated "as a hospital that assumed to a material extent burdens which might otherwise fall upon the community which it served." The appraisal district further argues that the hospital does not benefit persons, indefinite in numbers and personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the State.

In *Aransas Hospital, Inc.*, the court determined that the trial court did not err by refusing to find that the hospital in question was an institution of purely public charity. The record in *Aransas Hospital, Inc.* shows, among other things, that the evidence revealed only "four instances where the Hospital furnished services that undoubtedly were purely charitable in nature." *Id.* at 689. The record further shows that in a five-year period the hospital could classify only seventy-eight persons as charity because those persons had not paid all of the $12,861.90 which had been billed to them.

 In this instance however, the record shows that the hospital in question had 517 charity patients in 1980. The record further shows that the hospital rendered approximately $248,307.76 in charity services over the two-and-one-half-year period beginning in January 1980 and ending in June 1982. Thus, from our review of the entire record, we are persuaded that the evidence shows the charitable gratuities extended by the hospital were "of an unconditional nature," and that the hospital had assumed "to a material extent, that which otherwise might become the obligation or duty of the community or the state." *City of McAllen v. Ev. Luth. Good Sam. Soc.*, 530 S.W.2d at 809–10. The appraisal district's fifth point of error is overruled.

By its fourth point of error, the appraisal district claims the trial court erred by admitting "Plaintiff's Exhibit Number 5" over its objection "that no proper predicate had been laid to show the Exhibit's admissibility." We disagree.

"Plaintiff's Exhibit Number 5" is identified in the record as a partial list of the names and account of services rendered to charity patients by the hospital for the two-and-one-half-year period beginning in January 1980 and ending in June 1982. The list was prepared by the hospital's administrator who had worked for the hospital for eighteen years and served as administrator for the last ten years. The administrator prepared the exhibit from the hospital records. The administrator testified from her own personal knowledge that the individuals named on the list were charity patients of the hospital. However, she did state that the list did not show all of the hospital's charity patients because the record system had changed and she was not able to identify all of the charity patients. However, she could personally identify the names shown on the list and the amount of services rendered to those patients.

In this Court, the appraisal district claims the challenged exhibit is inadmissible because it does not comply with Tex. Rev.Civ.Stat.Ann. art. 3737e (Vernon Supp. 1985). However, that objection to the admissibility of the exhibit was not voiced or raised in the trial court. In that regard, the record shows that the exhibit was twice offered by the hospital. The first time the exhibit was offered, the appraisal district made a general objection to the effect that the exhibit was not relevant. The trial court charitably sustained the objection.

After further testimony, the exhibit was re-offered. At that time, the appraisal district's counsel stated: "Your Honor, I still am going to object," and stated an argument that challenged the exhibit's weight and credibility rather than its admissibility. Responding to the counsel's statement, the trial court said, "Is [sic] that is the sole objection, it is overruled."

▪ The record reveals that the appraisal district failed: (1) to inform the trial court that it was objecting to the exhibit on the ground "that no proper predicate had been laid to show the exhibit's admissibility" and (2) to object to the exhibit on the

ground that it did not comply with article 3737e. It is well established that objections to the admissibility of evidence not made in the trial court present nothing for review in the appellate court. *Seymour v. Texas & N.O.R. Co.*, 209 S.W.2d 814 (Tex. Civ.App.—El Paso 1947, writ ref'd); *Barton v. Bailey*, 202 S.W.2d 277 (Tex.Civ. App.—Eastland 1947, writ ref'd n.r.e.); *Barrera v. Duval County Ranch Co.*, 135 S.W.2d 518 (Tex.Civ.App.—San Antonio 1939, writ ref'd). *See also Hooten v. Dunbar*, 347 S.W.2d 775 (Tex.Civ.App.—Beaumont 1961, writ ref'd n.r.e.). Consequently, we overrule the appraisal district's fourth point of error.

In summary, we overrule the appraisal district's five points of error and affirm the judgment of the trial court.