## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 12, 2007

The Honorable Ruth Jones McClendon
Chair, Committee on Rules and Resolutions
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0537

Re: Whether Juneteenth USA, a 501(c)(3) charitable organization, is entitled to receive a property tax exemption (RQ-0541-GA)

Dear Representative McClendon:

Your predecessor as Chair of the Committee on Rules and Resolutions inquired on behalf of the Harris County Appraisal District (the "District") whether Juneteenth USA, a 501(c)(3) charitable organization, is entitled to a property tax exemption.[1] As background on the organization, your predecessor informed us that Juneteenth USA "was organized for the purposes of preserving the State Holiday and recognizing the end of slavery in Texas." Request Letter, *supra* note 1, at 1. The organization "encourages the education and awareness of the African-American's place in history and its culture." *Id.* Your predecessor further informed us that Juneteenth USA also "participates in various aspects of the culture including gospel, community service, job training, and volunteerism." *Id.*

In addition, your predecessor informed us that Juneteenth USA acquired a historic property —the Paris Majestic Theater—in 1993. *See id.* Juneteenth USA intended to "eventually restore and use [the property] as its headquarters and to provide space for other community-based charitable programs." *Id.* Subsequent to Juneteenth USA's acquisition, the property "sustained roof damage[,] which presently makes it uninhabitable, and the organization does not currently have the funds to make the repairs necessary for occupancy." *Id.* The District granted an exemption for the property for the 1995 to 2005 tax years but cancelled the exemption for tax year 2006 because of reports that the building was unoccupied. *See id.* We understand from your predecessor that the District has restored the exemption for tax year 2006 pending this opinion request, but inquires "whether, given that the building cannot presently be occupied, it is eligible for exemption under [section 11.18, Property Tax Code] and under article VIII, [section 2 of the] Texas Constitution." *Id.* Another question presented in your predecessor's request is "whether [the District] has the authority to reinstate permanent tax exempt[] status to Juneteenth USA and the ability to remove taxes that have been [charged] to the organization." *Id.*

---

[1]*See* Letter from Honorable Al Edwards, Chair, Committee on Rules and Resolutions, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Oct. 24, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

The Property Tax Code, codified as Title I of the Tax Code, contains section 11.18, which implements the charitable organization authorization of article VIII, section 2(a) of the Texas Constitution. *See Cent. Appraisal Dist. v. Pecan Valley Facilities, Inc.*, 704 S.W.2d 86, 88 (Tex. App.—Eastland 1985, writ ref'd n.r.e.). Article VIII, section 2(a) provides that "the legislature may, by general laws, exempt from taxation . . . institutions engaged primarily in public charitable functions." TEX. CONST. art. VIII, § 2(a). And Tax Code section 11.18 provides that

> [a]n organization that qualifies as a charitable organization as provided by this section is entitled to an exemption from taxation of:
>
> (1) the buildings and tangible personal property that:
>
> (A) are owned by the charitable organization; and
>
> (B) except as permitted by Subsection (b), are used exclusively by qualified charitable organizations; and
>
> (2) the real property owned by the charitable organization consisting of:
>
> (A) an incomplete improvement that:
>
> (i) is under active construction or other physical preparation; and
>
> (ii) is designed and intended to be used exclusively by qualified charitable organizations; and
>
> (B) the land on which the incomplete improvement is located that will be reasonably necessary for the use of the improvement by qualified charitable organizations.

TEX. TAX CODE ANN. § 11.18(a) (Vernon Supp. 2006).

For a charitable organization to qualify for a tax exemption under the constitution and section 11.18, the property in question must be used for charitable purposes.[2] *See id.* § 11.18(a)(1)(B) ("used exclusively by qualified charitable organizations"); *see also N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991) (stating that property must satisfy applicable constitutional requirements). "[M]ere intentions, well-grounded plans and hopes cannot

---

[2] *See Santa Rosa Infirmary v. City of San Antonio*, 259 S.W. 926, 931–32 (Tex. Comm'n App. 1924, judgm't adopted); *see also Hilltop Vill., Inc. v. Kerrville Indep. Sch. Dist.*, 426 S.W.2d 943, 946–47 (Tex. 1968), *overruled on other grounds by City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y*, 530 S.W.2d 806, 811 (Tex. 1975); *City of Longview v. Markham-McRee Mem'l Hosp.*, 152 S.W.2d 1112, 1113 (Tex. 1941); *Morris v. Lone Star Chapter No. 6, Royal Arch Masons*, 5 S.W. 519, 520–21 (Tex. 1887).

confer the exemption[;] in other words . . . intention to use, without use, is not sufficient." *Hedgecroft v. City of Houston*, 244 S.W.2d 632, 636 (Tex. 1951). Instead, "there must be a dedication of the propert[y] to charitable uses accompanied by actual uses for such purposes." *Hilltop Vill., Inc. v. Kerrville Indep. Sch. Dist.*, 426 S.W.2d 943, 947 (Tex. 1968), *overruled on other grounds by City of McAllen v. Evangelical Lutheran Good Samaritan Soc'y*, 530 S.W.2d 806, 811 (Tex. 1975). Because the "building cannot presently be occupied," the District questions whether the property is eligible for the tax exemption. *See* Request Letter, *supra* note 1, at 1.

In *Hedgecroft,* the Texas Supreme Court allowed an exemption for a charitable organization where the organization's property was not occupied. *See Hedgecroft*, 244 S.W.2d at 662. Though unoccupied, the organization's building was being remodeled and adapted so that the property could be put to its intended charitable use. *See id.* The court stated that the "constitutional clause which admittedly exempts the property during operation likewise exempts the property during bona fide necessary preparation." *Id.* Section 11.18 allows an exemption for "incomplete improvement[s]" so long as the improvements are "under active construction or other physical preparation." TEX. TAX CODE ANN. § 11.18(a)(2) (Vernon Supp. 2006). But whether any specific property is exempt from taxation depends on the facts and circumstances and is initially determined by the chief appraiser of the appraisal district. *See Tex. Tpk. Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954) (stating that tax exemption is fact question); TEX. TAX CODE ANN. § 11.45(a) (Vernon 2001) ("The chief appraiser shall determine . . . each applicant's right to an exemption."). Thus, the fact that Juneteenth USA's building is unoccupied does not preclude it from being tax exempt. The fact question of whether the building is being adapted or improved so that it is used for charitable purposes under *Hedgecroft* and section 11.18, and thus is eligible for the exemption, is one we must leave to the chief appraiser.[3]

According to your predecessor, the District also questions whether it has "authority to reinstate permanent tax exempt[] status to Juneteenth USA and the ability to remove taxes that have been [charged] to the organization." Request Letter, *supra* note 1, at 1. With respect to the District's authority, the Tax Code requires each appraisal district to appraise property for the ad valorem taxing units[4] within the appraisal district. *See* TEX. TAX CODE ANN. § 6.01(a)–(b) (Vernon 2001). The chief appraiser of the appraisal district determines a property owner's right to an exemption based on the claimant's qualifications as of January 1. *See id.* §§ 11.42(a) (Vernon Supp. 2006), 11.45(a) (Vernon 2001). The chief appraiser prepares "appraisal records listing all property that is taxable in the district and stating the appraised value of each" and submits the appraisal records to the

---

[3]We do not consider whether Juneteenth USA satisfies the other aspects of section 11.18 because your predecessor states that "[t]here are no other questions regarding the eligibility of the organization for exemption." Request Letter, *supra* note 1, at 1.

[4]A taxing unit is "a county, an incorporated city or town (including a home-rule city), a school district, a special district or authority (including a junior college district, a hospital district, a district created by or pursuant to the Water Code, a mosquito control district, a fire prevention district, or a noxious weed control district), or any other political unit of this state, whether created by or pursuant to the constitution or a local, special, or general law, that is authorized to impose and is imposing ad valorem taxes on property even if the governing body of another political unit determines the tax rate for the unit or otherwise governs its affairs." TEX. TAX CODE ANN. § 1.04(12) (Vernon Supp. 2006).

appraisal review board for review and approval pursuant to chapter 41. *See id.* §§ 25.01(a), .22(a), 41.01, .12 (Vernon 2001). Once the appraisal review board reviews the appraisal records and determines all protests, it approves the appraisal records. *See id.* § 41.12(a). The approved appraisal records constitute the appraisal roll, which cannot be changed "[e]xcept as provided by Chapters 41 and 42 [and section 25.25]." *Id.* §§ 25.24 (Vernon 2001), 25.25(a) (Vernon Supp. 2006). *But see id.* § 11.43(i) (Vernon Supp. 2006) (authorizing back appraisal of erroneously exempted property).

Chapter 41 authorizes a property owner to protest the chief appraiser's determination to include property on the appraisal records upon filing written notice with the appraisal review board pursuant to section 41.44. *See id.* §§ 41.41(a) (Vernon 2001), 41.44 (Vernon Supp. 2006). And chapter 42 authorizes a property owner to appeal an adverse appraisal review board decision to the district court. *See id.* § 42.01(a) (Vernon 2001). It does not appear and we have not been informed that any protest has been filed. *See* Request Letter, *supra* note 1, at 1. Thus, absent a protest under chapter 41 or 42 of the Tax Code, property may be removed from the appraisal roll by the chief appraiser only as authorized by section 25.25.

Section 25.25 authorizes the chief appraiser at any time to correct the appraisal roll to "correct a name or address, a determination of ownership, a description of property, multiple appraisals of a property, or a clerical error or other inaccuracy as prescribed by board rule that does not increase the amount of tax liability." TEX. TAX CODE ANN. § 25.25(b) (Vernon Supp. 2006). Seeking to have a property removed from an appraisal roll for the improper denial of an exemption does not constitute a correction of a "name or address, a determination of ownership, a description of property, [or] multiple appraisals of a property." *Id.* Nor does it constitute correction of a clerical error because "clerical error" is defined to exclude "an error that is or results from a mistake in judgment or reasoning in the making of [a] finding or determination." *Id.* § 1.04(18). Thus, the 2006 appraisal roll may be corrected to remove Juneteenth USA's property only if the denial of an exemption is an "other inaccuracy as prescribed by board rule[5] that does not increase the amount of tax liability." *Id.* § 25.25(b) (footnote added).

The Tax Code does not define the term "inaccuracy," and no judicial opinion or opinion from this office has construed this language from section 25.25(b). But we believe it must mean something other than challenging the chief appraiser's decision to deny a tax exemption. Property owners have express statutory authority to protest the denial of an exemption before the board and to seek judicial review of the appraisal review board's determination of the protest. *See id.* §§ 41.41(a)(3), 42.01(1)(A) (Vernon 2001). To construe section 25.25(b) as authorizing review of the exemption decision would circumvent the protest and judicial review procedures of chapters 41 and 42. We do not believe the Legislature intended the language allowing for correction of inaccuracies in the appraisal rolls by the chief appraiser to be construed to provide property owners a second opportunity or an alternative method to challenge the chief appraiser's decision. Accordingly, absent a protest by Juneteenth USA under chapter 41 or 42, the District is without

---

[5]Your predecessor did not indicate that there are any relevant board rules. *See* Request Letter, *supra* note 1, at 1.

power to remove the property from the appraisal roll and reinstate the 2006 exemption under section 25.25(b) of the Tax Code.

At the same time, appraisal districts have no authority over the levy of taxes.  Instead, taxing units are responsible for the assessment of taxes.  *See id*. chs. 25 (appraisal districts), 26 (assessment by taxing units) (Vernon 2001 & Supp. 2006).  But, like appraisal districts, taxing units have only limited authority to correct tax rolls.  *See id*. § 26.15 (Vernon 2001).  Once the chief appraiser certifies the appraisal rolls to the taxing unit's assessor, the assessor makes certain calculations and submits the appraisal roll to the taxing unit's governmental body for adoption of a tax rate.  *See id*. §§ 26.01(a), .04(a)–(b) (Vernon 2001), 26.05(a) (Vernon Supp. 2006) (tax rate).  "The appraisal roll with amounts of tax entered as approved by the governing body constitutes the unit's tax roll."  *Id*. § 26.09(e) (Vernon 2001).  The "tax roll for a taxing unit may not be changed" except through action under chapters 41 and 42 and section 26.15.  *Id*. § 26.15(a).

Under section 26.15, the assessor may make changes that result from a chief appraiser's correction under section 25.25, and the taxing unit's governing body may change the tax roll to "correct errors in the mathematical computation of a tax."  *Id*. § 26.15(b)–(c).  An error "in the mathematical computation of a tax" clearly involves only mathematical errors and does not include an effort to qualify for an exemption or to have an exemption reinstated.  And nowhere in section 26.15 or the entirety of the Tax Code is the taxing unit's assessor or governing body authorized to simply remove a property and its tax obligation from the tax roll.  Again, absent an action by Juneteenth USA under chapter 41 or 42, the taxing units in which Juneteenth USA's property is located are not authorized to remove the property and its tax obligation from the tax rolls under section 26.15.

## S U M M A R Y

Whether any property is entitled to a tax exemption is a fact question within the authority of the chief appraiser of the appraisal district to initially determine. Once property is included on the appraisal roll and tax roll, absent any action by Juneteenth USA under chapters 41 and 42, Texas Tax Code, the appraisal district and applicable taxing units are without power, respectively, to reinstate Juneteenth USA's tax exemption or to remove it and its tax obligation from the tax rolls.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee